**C. E. BRADSHAW, Sr., Appellant,**

v.

**Vic THOMPSON et al., Appellees.**

**No. 71–1131.**

United States Court of Appeals, Sixth Circuit.

Jan. 20, 1972.

---

George T. Eidson, Jr., and Gregory A. Presnell, Orlando, Fla., for appellant; Akerman, Senterfitt, Eidson & Wharton, Orlando, Fla., of counsel.

Ben Kingree, III, Shelbyville, Tenn., for Thompson; Ben Kingree, III, of Bobo, Tarpley & Kingree, Shelbyville, Tenn., on brief.

James C. Burns, Jr., Shelbyville, Tenn., on brief, for Martin.

Jack M. Irion, Shelbyville, Tenn., for Brandon; Bomar, Shofner, Bomar & Irion, Shelbyville, Tenn., on brief.

Knox Bigham, Lewisburg, Tenn., for Beech; Bigham & Binkley, Lewisburg, Tenn., on brief.

Before EDWARDS, PECK and MILLER, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This case arose from an agency contract between the plaintiff-appellant, C. E. Bradshaw, a resident of Florida, and the defendant-appellee, Vic Thompson, a resident of Tennessee. The contract provided that Thompson was to sell some 60 Tennessee Walking Horses owned by Bradshaw at the best and highest cash price; that he was to house, feed and care for them; that the title to all horses was to remain in Bradshaw's name until after the sale; and that any check obtained by Thompson for the sale of any horse was to be made payable by the purchaser to Bradshaw, who would then remit to Thompson by separate check a twenty-five percent commission. Finally, the contract listed various items of equine tack belonging to Bradshaw

which Thompson agreed to return upon termination of the agreement. The contract was signed and the horses were shipped to Thompson for sale in Tennessee.

Thompson then contracted with and delivered certain horses to the defendants-appellees Wallace Brandon and Joe Martin for the purpose of assisting in the sale of the horses. The remainder of the horses were retained by Thompson, and were disposed of in various ways: some were sold to purchasers who remitted checks payable to Bradshaw as contemplated by the contract; some were given away by Thompson as additional commission for assisting in the sale of other horses; some were sold on credit; some were traded to third parties in exchange for other horses; some were sold for cash or for check made payable to Thompson; some were sold to a partnership consisting of various named defendants; some were sold at public auction and purchased by Thompson or by one or more of the other defendants; some were sold directly to Brandon who eventually resold them; and some horses died while in the possession of Thompson. The appellees produced no records of any of these transactions, other than a few bank deposit slips. By October of 1968, all but approximately 21 of the horses had been disposed of. These remaining horses were entered by Thompson in the Murray Farm Sale, a public auction owned and operated by the defendant Beech.

When the appellant became aware that he could not ascertain what was happening in Tennessee to his horses, he filed this action in the District Court for the Eastern District of Tennessee basing jurisdiction on diversity of citizenship. In his original complaint, Bradshaw made allegations of fraud, conspiracy, breach of contract and breach of fiduciary duty, and requested a trial by jury. This complaint was later amended to delete the jury request and to include a request for an equitable accounting. The defendants contended that the action was one at law and requested a jury

trial. The case was severed, and on the issue of liability, the jury found that Thompson, Brandon and Martin were all duly appointed agents and sub-agents of Bradshaw, but that only Thompson had breached his fiduciary duty to his principal. The issue of damages was then tried to the jury, and an award of $12,323.27 compensatory and $1,000.00 punitive damages was made against Thompson.

■■ The appellant's prime contention on appeal is that the Court erred in submitting the case to the jury. He insists that his action is purely equitable and that only through an accounting will he be able to determine what sums are owed to him, but the existence of an agency relationship does not automatically entitle the principal to an accounting, nor does a prayer for an accounting automatically take the case away from the jury. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1961), Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 548, 3 L.Ed.2d 988 (1959). The law on this first point is accurately summarized by the comment to § 399(e) of the Restatement of Agency:

> [U]nless there is such a complication of accounts that it is difficult for the machinery of the law courts to cope with them, the principal ordinarily cannot bring an action in equity for money due; if his remedy otherwise would be solely in the courts of law, he cannot bring an action for an account merely on the ground of the agency relation.

In Dairy Queen, Inc. v. Wood, the Supreme Court noted that insofar as the complaint requested a money judgment, it presented a claim which was unquestionably legal. The fact that the complaint was cast in terms of an accounting rather than in terms of an action for debt or damages did not alter the right to a trial by jury. 396 U.S. at 476, 82 S.Ct. 894. See also Beacon Theatres, Inc. v. Westover, 359 U.S. at 503–504, 514, 79 S.Ct. 548 (dissenting

opinion) (1959). The problem of the instant case seems to have been anticipated by the Court when it commented in *Dairy Queen* upon the broad powers of discovery now available in suits at law:

> Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the "accounts between the parties" are of such a "complicated nature" that only a court of equity can satisfactorily unravel them. In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met. 369 U.S. at 478, 82 S.Ct. at 900.

■ The appellant sought recovery from Thompson for damages arising out of an alleged breach of contract. He alleged, among other things, that Thompson fraudulently withheld and concealed portions of the consideration which was the subject matter of the contract. He sought compensatory damages, including all commissions paid by appellant, lost profits for Thompson's failure to obtain the best and highest cash price for the animals, and punitive damages for fraud. These claims are unmistakably legal, and the defendants were entitled to a jury trial on all contested issues of fact. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 548, 3 L.Ed.2d 988 (1959).

The leading opinion subsequent to *Beacon Theatres* and *Dairy Queen* appears to be Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486 (5th Cir. 1961). There it was held that ". . . the mere presence of an equitable cause furnishes no justification for depriving a party to a legal action of his right to a jury trial." 294 F.2d at 490–491. In a footnote to that opinion it is noted that the result of *Beacon Theatres* will be a sharp reduction in the number of cases in which trial by a court without a jury may be held. 294 F.2d at 491, n. 12. See also McCoid, Procedural Reform and the Right to Jury Trial: A Study of Beacon Theatres, Inc. v. Westover, 116 U.Pa.L. Rev. 1 (1967). The availability of declaratory judgments and the liberal discovery procedures of the Federal Rules operate to make the legal remedies more "adequate" than before. This case is an example of that fact.

The appellant obtained by discovery all information to which he could have been entitled in an accounting. Information concerning the disposition of each horse, including purchase price, name of purchaser and the consideration received was obtained and was set forth in the pretrial order. Furthermore, the Court allowed the appellant a reasonable time after the jury had reported its verdict to request any further equitable accounting from Thompson. No request was every received.

■ An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another. It is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate. We find no basis for disturbing the District Court's conclusion that the procedures of the Federal Rules for causes at law were fully adequate to provide the relief sought by the appellant.

■ The appellant contends that the duty of the defendants Thompson, Brandon and Martin to render an accounting arose when the jury found that they were duly appointed agents and subagents of the appellant. He contends that he had shown that the defendant Martin had purchased several of his horses at the Murray Farm Sale, thereby breaching the duty of an agent not to purchase the property of his principal which has been entrusted to him to sell,

and that this breach of fiduciary duty by his sub-agent gives him a right to an accounting. We cannot agree with this contention. As pointed out earlier, the existence of an agency relationship does not automatically entitle the principal to an accounting. Furthermore, it was stipulated that Martin's responsibility as a sub-agent terminated upon the return of the horses to Thompson at the Murray Farm Sale. Thus, by the terms of the agreement, the sub-agency relationship terminated prior to any purchase by Martin at the auction. The rule that an agent employed to sell property cannot himself become the purchaser at his own sale would not apply here, where the agent acquired an interest in the property by a bona-fide sale after the termination of the agency. Robertson v. Chapman, 152 U.S. 673, 683, 14 S.Ct. 741, 38 L.Ed. 592 (1894).

▆▆▆ The appellant further contends that the Court abused its discretion in declining to appoint a master to assist the jury. The decision to appoint a master whose function is to aid the judge in the performance of specific judicial duties, is within the discretion of the District Court. La Buy v. Howes Leather Co., 352 U.S. 249, 256, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). The fact that "the case involves complex issues of fact and law is no justification for reference to a Master, but rather is an impelling reason for trial before an experienced judge." Bartlett-Collins Co. v. Surinam Nav. Co., 381 F.2d 546, 551 (10th Cir. 1967); see also In re Watkins, 271 F.2d 771 (5th Cir. 1959). The overall mandate of Rule 53(b) is that reference to a master is to be the exception and not the rule. Actions for fraud are particularly inappropriate for reference to a master, "save in extraordinary or exceptional cases." Irving-Austin Bldg. Corp. v. Cunningham, 100 F.2d 574 (7th Cir. 1938). We find no abuse of discretion in the Court's refusing to appoint a master to assist the jury.

The appellant's claim against the defendant Beech differs substantially from his claims against the other defendants, and it can be considered separately. On the night of October 16, 1968, one of Bradshaw's horses, "Rambler's Image B," was purchased at the Murray Farm Sale by Mrs. Wallace Brandon. The purchaser did not pay for the horse that night, and the transfer papers were not executed until the following morning. On the morning of October 17, prior to the execution of those papers, the appellant phoned Miss Wiggins, an employee of Beech, and instructed her that the sale was not to be completed because the value of the horse had been depressed because the horse had been led rather than ridden through the sale ring. Nevertheless, Miss Wiggins was instructed by Beech to sign over the title papers to the purchaser.

▆▆▆ The appellant's contention that the transfer of these papers was a violation of the power-of-attorney relationship which had been created to allow Miss Wiggins to complete these sales for the appellant belies a misunderstanding of the sale. All the rights, duties and obligations of the Beech-Bradshaw relationship arose out of contract. Section 2–328(2) of the Uniform Commercial Code, adopted in Tennessee as T.C.A. § 47–2–328(2), governs all sales made by auction and is dispositive of the issue concerning the sale of the horse "Rambler's Image B." This section provides that "a sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner . . . ." The "customary manner" of this particular auction is set forth in boldface type in the sale catalogue published by Murray Farm:

> Cosigners will have the privilege of no sale if they do not wish to sell for the last bid on the animal, however, let it beknown [sic] before leaving the sale ring.

Thus a seller could withdraw a horse from sale even after the fall of the hammer, but only before the horse was taken from the sale ring. When this horse was taken from the ring after being

sold, all title and interest passed to the purchaser. Thereafter, Beech's authority in the horse was terminated, as was Bradshaw's, and the seller was required to do all that was necessary to conclude the transaction. The delivery of papers providing evidence of ownership was not necessary to pass title. The District Court did not err in directing a verdict in favor of Beech.

Nor can we find any abuse of discretion in the award of costs in favor of Beech under F.R.Civ.P. 37(c). On August 6, 1969, prior to trial, Beech served on the appellant a request to admit that neither Bradshaw nor anyone on his behalf let it be known before the horse left the sale ring that the appellant desired to "no sale" the horse. This request was denied by the appellant, both in his pleadings, and at the pretrial conference. On June 29, 1970, the fifth day of the trial, the appellant finally stipulated:

> . . . neither Beech nor any representative of Murray Farm was advised by the plaintiff or any of his agents or employees that Rambler's Image B was to be no saled prior to the time that the horse was taken from the sale ring after being auctioned on the night of October 16, 1968.

At this point, the Court directed a verdict in Beech's favor. An award of $4,026.37 was made pursuant to Rule 37(c) to Beech for the amount claimed by him as his reasonable expenses incurred in making proof of this fact denied upon the request for admissions. This rule requires the Court to award expenses including reasonable attorney's fees to a party whose request for the admission of the truth of any matter under Rule 36 is denied and who thereafter proves the truth of the matter, unless any one of four conditions is found to exist. The District Court found that none of the four enumerated conditions was present in this case, and we will not disturb that finding, and we do not find any abuse of discretion in the amount of the award. The determinative fact upon which Beech's liability would depend was whether he had received a no sale instruction from the appellant *before* the horse had been taken from the ring, and the entirety of Beech's defense was directed toward establishing this one fact.

The appellant also objects to the District Court's refusal to inform counsel of its intended jury charges prior to the closing arguments as required by Rule 51. The Court noted only that "mechanical and administrative reasons" existed for this failure. Although this does not satisfy the unconditional mandate of the rule, noncompliance does not warrant a new trial unless material prejudice is shown to exist. Hardigg v. Inglett, 250 F.2d 895 (4th Cir. 1957). Appellant has failed to show that material prejudice resulted because of the failure of the District Court to comply with this aspect of Rule 51, and therefore the order of the District Court is, in all respects, affirmed.