**UNIVERSAL LIFE CHURCH, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 583–84T.**

United States Claims Court.

Feb. 29, 1988.

---

Peter R. Stromer, Los Gatos, Cal., for plaintiff.

David Gustafson, Washington, D.C., with whom were W.C. Rapp, Gerald B. Leedom, Mildred L. Seidman, and Asst. Atty. Gen. William S. Rose, Jr., for defendant.

### ORDER

NETTESHEIM, Judge.

Defendant has moved, pursuant to RUSCC 37(c), for its expenses, including

attorneys' fees, in the amount of $11,962.00 in connection with plaintiff's denial of four requested admissions of fact.

## FACTS

On November 10, 1987, this court granted defendant's motion for summary judgment holding that plaintiff, Universal Life Church, Inc. ("plaintiff" or "ULC"), no longer qualifies as a tax-exempt organization because the ULC was operated for the substantial nonexempt purpose of disseminating tax-related information to its congregations. *Universal Life Church, Inc. v. United States*, 13 Cl.Ct. 567 (1987). Plaintiff moved for reconsideration on November 23, 1987, defendant opposed, and the motion was denied on December 15, 1987. Subsequently, defendant submitted its Bill of Costs on January 14, 1988, in the amount of $3,075.49, and on the following day plaintiff filed its notice of appeal. *Universal Life Church, Inc. v. United States, appeal docketed*, No. 88–1179 (Fed. Cir. Jan. 15, 1988).

On January 19, 1988, defendant moved for leave to file a motion for sanctions. An order issued on January 20, 1988, requiring plaintiff to respond within the time provided for by rule. On January 26, 1988, after plaintiff had responded jointly to the motion for leave and the motion for sanctions, the latter was allowed to be filed. Defendant replied on February 4, 1988.

### 1. *Control of congregational funds*

Defendant sought to have plaintiff to admit, or to elicit a denial with evidentiary support, that plaintiff exercised control over local ULC congregations and their accounts. Defendant submitted in its requests for admissions the following:

4. During the period May 1, 1977, through April 30, 1981, plaintiff exercised no supervision or control over the expenditures of funds from bank accounts opened by plaintiff's chartered congregations.

Def's Req. for Adm. dated Mar. 14, 1986. Plaintiff denied this assertion, Plf's Resp. to Req. for Adm. dated Apr. 11, 1986, even though during argument on defendant's earlier motion for summary judgment argued in 1986, counsel had stated that the church "would have no dominion and control over those monies in the earlier years," Transcript of proceedings, Feb. 28, 1986, at 20; that it "exercised little if any supervision," *id.* at 21; and, in a response to the court about whether the congregations were supervised, that "[i]t was impossible in the early years, just as it's impossible today." *Id.* at 25.

Defendant also sought through interrogatories and document requests to prove that which plaintiff had denied. Defendant made specific requests, such as the following:

13. Describe each way in which plaintiff exercised any control or supervision over the expenditure of the money in the bank accounts of its chartered congregations during the period May 1, 1977, through April 30, 1981, (Plaintiff need not respond to this interrogatory if it has admitted, without qualification, Requested Admissions Nos. 4–8).

Def's Interr. dated Mar. 14, 1986. Plaintiff responded: "See Congregation Charter Agreement. When we learned of breach of agreement, we tried to close the account on behalf of the corporation." Plf's Ans. to Interr. dated Apr. 11, 1986. In response to defendant's inquiry as to the evidentiary basis for the proffer, plaintiff identified four church officers who could "confirm that ULC instructed its congregations to obey church rules ... and all applicable laws." Plf's Ans. to Req. for Prod. dated Apr. 11, 1986, No. 14. A parallel second request for production at No. 9 sought every document upon which plaintiff relied for this assertion. Def's Req. for Prod. dated Mar. 14, 1986. Plaintiff objected that the production sought was burdensome and oppressive:

9. All donations receipted by ULC were for monies intended for the use of ULC. Failure to comply with church rules and regulations led to revocation of charters, and efforts to obtain all monies outstanding in local bank accounts for reversion to international ULC head-

quarters, as reflected in church literature.

Plf's Ans. to Req. for Prod. dated Apr. 11, 1986.

Defendant sought any evidence of charter revocation or confiscation of accounts through interrogatories:

> 17. For each charter that plaintiff has revoked (1) give the charter number, the name of the congregation, and the names of its officers; (2) give the date on which the charter was actually revoked and, if different, the effective date of the revocation; (3) list the person or persons who decided the charter should be revoked; (4) explain in detail the reason the charter was revoked; and (5) state what property (if any) of the former congregation came into plaintiff's custody or control after the charter was revoked.

Def's Interr. dated Mar. 14, 1986. Plaintiff replied that the information was privileged. Plf's Ans. to Interr. dated Apr. 11, 1986. Plaintiff, however, failed to explain the basis for its claim of privilege. To other interrogatories, *e.g.*, No. 18, plaintiff gave a nonresponsive or inadequate answer.[1]

In a similar fashion, defendant's document requests, Def's Req. for Prod. dated Mar. 14, 1986, Nos. 9–19, were met with nonresponsive replies or invalid objections. For example, to several requests plaintiff replied that they were "burdensome and oppressive," but failed to provide an explanation. Plf's Ans. to Req. for Prod. dated Apr. 11, 1986.

Defendant sent a letter on March 24, 1986, to plaintiff's lawyer explaining problems with plaintiff's responses and requesting that plaintiff reconsider its position. Plaintiff's responsive letter again failed adequately to respond or explain possibly valid objections. Defendant's recourse was its September 4, 1986 motion to compel the requested discovery, which was granted by the Chief Judge before the case was reassigned to this court. This court, however, afforded plaintiff another opportunity to

respond to the discovery requests. *See* 13 Cl.Ct. at 569 n. 2.

In its opinion on defendant's renewed motion for summary judgment, the court relied on defendant's proposed findings and the lack of evidence, admissible or otherwise, by plaintiff to controvert the findings in ruling that plaintiff had failed to exercise supervision or control over its chartered congregations:

> There was no central control over the funds donated to the church. In fact, plaintiff in its Spring 1978 Newsletter stated its desire not to become involved with individual congregation's bank accounts: "[I]f this office should place the official seal on the form, we would not only be responsible for the account, but would have control of and access to the account." Plaintiff did not require that it be involved in the opening of bank accounts, although it recognized that some banks may have such a requirement, nor was plaintiff aware of the number of accounts opened in its name. Even though plaintiff was unaware of the number of accounts and the purpose for which the funds were being used, it provided on request annual receipts to substantiate contributions.

13 Cl.Ct. at 583. Plaintiff's failure at every stage of the discovery process, in briefing, and at oral argument to present one iota of evidence that it exercised control over its congregations underlay this finding. Plaintiff had ample opportunity to support its denial of the requested admission that "plaintiff exercised no supervision or control over the expenditure of funds from the bank accounts opened by plaintiff's chartered congregations." Instead, plaintiff presented no evidence to raise a genuine issue of material fact on point and thereby to prevent summary disposition of its case.

Even after summary judgment was granted to defendant on the basis that plaintiff had failed to present any evidence raising a genuine issue of material fact,

---

1. Defendant's Interrogatory No. 18 requested that plaintiff provide the number of chartered congregations participating in the Receipts and Disbursements Program on a yearly basis.

Plaintiff's response was an objection without explanation. Plf's Ans. to Interr. dated Apr. 11, 1986.

plaintiff, on reconsideration, stated that its revision of publications and the Declarations of Kirby J. Hensley, Lida G. Hensley, and Manzanita Hensley Lowarch submitted in opposition to defendant's renewed motion for summary judgment refuted the finding that ULC failed in its duty to supervise its congregations. These showings had been held insufficient either because they were stricken from the record as a sanction for failure to make discovery or because they failed to raise a dispute of fact. Moreover, in its response to defendant's renewed motion for summary judgment, plaintiff did not resubmit or direct the court's attention to the earlier declarations made in connection with defendant's earlier motion for summary judgment. *See Universal Life Church, Inc. v. United States,* 9 Cl.Ct. 614 (1986). Plaintiff submitted, instead, its more general Declarations of Kirby J. Hensley, July 31, 1987; Manzanita Hensley Lowarch, July 31, 1987; and Lida G. Hensley, July 30, 1987, to support its opposition to summary judgment. However, even if plaintiff had cited to its earlier declarations, plaintiff would have been required to support its declarations with the documents requested by defendant. No further evidence was forthcoming on this point, and the motion for reconsideration was denied.

Plaintiff's response to defendant's motion for sanctions is a continuation of its failure to address the contentions made by defendant. Plaintiff states: "Per RUSCC 37(c)(3), plaintiff in failing to effect desired admissions had reasonable ground to believe that it might prevail on the matter, and per RUSCC 37(c)(4), there was other good reason for the failure to admit." Plf's Br. filed Jan. 26, 1988, at 2.

However, plaintiff does not cite facts of record to support its opposition. Instead, plaintiff generally refers to Manzanita Hensley Lowarch's "deposition testimony" and declarations to show that it had exercised supervision and control. Plaintiff follows this with the statement: "These facts and circumstances were fully corroborated by declarations from Lida Hensley and Kirby J. Hensley," Plf's Br. filed Jan. 26, 1988, at 2, again failing to point to specific facts.

The court on summary judgment made a painstaking effort to identify evidence supporting plaintiff's position. However, it is not this court's function to discover the evidence upon which plaintiff seeks to rely, but, rather, it is plaintiff's responsibility to guide the court in making its decision by pointing to specific evidence opposing defendant's position on any issue as to which plaintiff carries the burden of proof. This plaintiff failed to do.

### 2. *Internal Revenue Service correspondence*

Defendant, in its requested admissions Nos. 22 and 24, sought information relating to plaintiff's correspondence with the Internal Revenue Service (the "IRS"):

22. Plaintiff sent its letters of the sort described in Requested Admission No. 21 [*i.e.,* "a letter to the Internal Revenue Service (similar to ... App. E at 368–373 ...), disputing the correctness of the disallowance"] without confirming that the contributions for which deductions were disallowed were actually made.

. . . .

24. Plaintiff sent its letters of the sort described in Requested Admission No. 21 without confirming that the money allegedly contributed was actually spent for exempt purposes.

Def's Req. for Adm. dated Mar. 14, 1986. The letters referred to were form letters which disputed the correctness of any disallowance made by the IRS with reference to plaintiff's chartered congregations. Plaintiff's only response was a denial of the assertions.

Defendant followed up its requested admissions with interrogatories aimed at plaintiff's procedures prior to its correspondence with the IRS. Defendant submitted the following interrogatory:

23. Describe each way in which plaintiff ..., before sending a letter of the sort described in Requested Admission No. 21, attempted to confirm:

(a) that the disputed contribution had actually been made ...;

. . . .

(c) that the money allegedly contributed was actually spent for exempt purposes. . . .

Def's Interr. dated Mar. 14, 1986. Plaintiff's response to (a) was "congregation file checked," and to (c) was "no way of knowing, relied on congregation's good faith and adherence to the ULC doctrine." Plf's Resp. to Interr. dated Apr. 11, 1986.

In addition to its interrogatories, defendant requested the production of all documents supporting the responses and production of the letters to the IRS described in requested admission No. 21. Plaintiff was also requested to produce its "IRS Suit File." Def's Req. for Prod. dated Mar. 14, 1986, No. 18. No documents were forthcoming and subsequent requests were unsuccessful. Defendant sought and was granted an order to produce these documents. *See* 13 Cl.Ct. at 569 n. 2. Plaintiff finally produced 193 letters that complied with the request; other identified letters could not be located.[2] *See id.* at 577.

Plaintiff's failure to rebut defendant's assertions with regard to production of the letters led the court to find: "Plaintiff would send out such letters without even confirming whether contributions had been made or whether the congregation to which the alleged donation was made was active." *Id.* at 578. Plaintiff presented no evidence illuminating the reason for its initial denial. Plaintiff's complete failure to address defendant's contentions led to a preclusive order and ultimately to the finding on this issue discussed above.

### 3. *Relationship with Church of Universal Harmony*

Defendant, by requested admission No. 30, sought to elicit an admission with respect to the relationship between plaintiff and the Church of Universal Harmony ("Universal Harmony"). The requested admission stated:

30. Through TEA and CUH [the Church of Universal Harmony], Riness and McGinnis entered into an agreement with plaintiff in 1978 giving them the right to issue ULC charters in exchange for a royalty payment to plaintiff for each charter issued. (Indictment para. 3.)

Def's Req. for Adm. dated Mar. 24, 1986. Plaintiff denied the admission based upon "lack of information and belief." Plf's Resp. to Req. for Adm. dated Apr. 11, 1986.

Defendant sought through Interrogatory No. 26 and document requests Nos. 20 and 21 to obtain plaintiff's supporting information. Plaintiff responded that it had no information on TEA [an Association of 20th Century Patriots] and "Riness & McGinnis operated Church of Universal Harmony as a congregation of ULC, Charter # 23557." Plf's Resp. to Interr. dated Apr. 11, 1986. Some documents were produced, but defendant was required to move to compel for production of the remaining documents. *See* 13 Cl.Ct. at 569 n. 2.

Subsequent discovery revealed a royalty agreement between the ULC and Universal Harmony for the franchising of church charters, regular correspondence between the entities, and evidence of public endorsement by plaintiff. In granting defendant's summary judgment motion, the court found that

Universal Harmony . . . operat[ed] as a franchise bringing new charters to plaintiff for a fee of $100 each. Universal Harmony was preassigned blocks of charter numbers in order to process new congregations. Universal Harmony maintained correspondence with plaintiff involving legal and receipt forms to be used by congregations; execution of documents to open bank accounts; transmission of quarterly reports; and records of ordination of ministers, along with other routine correspondence. An indication of the close affiliation existing

---

2. The 193 letters may be viewed as substantial production until one examines the enormity of letters generated by plaintiff. Included in the court's opinion was the following taken from undisputed statement of material facts: "In one 15–month period, plaintiff sent 1,194 letters, in one month 205 letters, and in one day alone 41 letters." 13 Cl.Ct. at 578.

between Universal Harmony and plaintiff....

*Id.* at 578.

Plaintiff asserts in its opposition to defendant's motion for sanctions that "[d]efendant has sought to link plaintiff with other individuals found guilty of tax crimes...." Plf's Br. filed Jan. 26, 1988, at 3. Plaintiff's association with Universal Harmony and Messrs. McGinnis and Riness has been established. 13 Cl.Ct. at 578–79. That is not to say, nor has defendant attempted to prove, that plaintiff was guilty of violating tax laws. Defendant merely attempted to obtain by its request for admissions plaintiff's acknowledgement of Universal Harmony's close association with plaintiff. This plaintiff denied, but the fact subsequently was established by defendant.

The necessity of defendant's further pursuit of evidence with reference to plaintiff's lack of supervision or control of its local congregations' expenditures, plaintiff's failure to confirm that contributions that it substantiated in correspondence with the IRS were made or were spent for exempt purposes, and plaintiff's affiliation with Universal Harmony is the subject of defendant's motion for sanctions.

## DISCUSSION

Plaintiff's initial objection to defendant's motion for sanctions was that this court has no jurisdiction to consider the matter since an appeal has been docketed by the Federal Circuit in the underlying litigation. However, as defendant advised in moving for leave to file its motion for sanctions, the Federal Circuit in *Chemical Engineering Corp. v. Essef Industries, Inc.,* 795 F.2d 1565, 1574 (Fed.Cir.1986), specifically has allowed the filing after trial and during the pendency of appeal of a motion for sanctions under Fed.R.Civ.P. 37(c) based on the failure to admit under Fed.R.Civ.P. 36.

RUSCC 37(c), identical to its counterpart in the Federal Rules of Civil Procedure, provides in full:

*Expenses on Failure To Admit.* If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorneys' fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) *the party failing to admit had reasonable ground to believe that he might prevail on the matter,* or (4) there was other good reason for the failure to admit.

(Emphasis added.)

This rule requires that the court award expenses for failure to admit unless it makes the stipulated findings favorable to the non-movant. Plaintiff takes the position that it comes within the third ground, *i.e.,* that in failing to make the requested admissions, plaintiff had reasonable ground to believe that it might prevail on each matter. Before addressing that contention, the court determines, with respect to the other three findings under Rule 37(c) that could exonerate plaintiff, that the record would not support a finding (1) that any of the three requests was objectionable; nor would the record support a finding (2) that any of the three admissions was of no substantial importance; nor would the record support a finding that (3) there was any other good reason for plaintiff's failure to admit.[3]

---

3. The four admissions for which defendant asks to receive its expenses in making proof were not isolated instances of plaintiff's failures to admit. Had the record displayed plaintiff's forthrightness in discovery, an argument might be made on plaintiff's behalf that its failure to admit on these points was an aberration for which it should not be required to sustain the expenses of proof. However, the record as a whole reveals that defendant wrested from plaintiff the discovery product that defendant used as the basis for its renewed motion for summary judgment.

The policy behind Rules 36 and 37 is to narrow issues for trial, concentrating the attention of the court upon claims which are "fairly debatable and have been presented in good faith." *Modern Food Process Co. v. Chester Packing & Provision Co.*, 30 F.Supp. 520, 521 (E.D.Pa.1939). In most cases imposing sanctions pursuant to Fed.R.Civ.P. 37(c), the court has acted to punish parties who concede matters at trial that were previously denied in their answers to requests for admissions. For example, in *Bradshaw v. Thompson*, 454 F.2d 75 (6th Cir.) *cert. denied*, 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972), the court focused on plaintiff's-appellant's failure to admit as to the "determinative fact" upon which defendant's liability rested, which was whether the agent had received a "no sale" order from plaintiff before one of plaintiff's horses left the sale ring. After originally denying that no "no sale" order was ever given by plaintiff or anyone on his behalf, plaintiff stipulated to this fact on the fifth day of trial. Given that the "entirety of ... [the] defense was directed toward establishing this one fact," the Sixth Circuit upheld the trial court's imposition of reasonable expenses. 454 F.2d at 81.

In *Pioneer National Title Insurance Co. v. Andrews*, 652 F.2d 439 (5th Cir. 1981), appellant Andrews denied having authored a document the genuineness of which "was of substantial importance in the trial and resolution of the case." 652 F.2d at 444. In discovery Andrews admitted that the document was drafted on his firm's letterhead and that it bore both his initials and those of his secretary's, all of which indicated that it was his correspondence prepared by her. At trial after extended discovery, Andrews admitted that the signature at the base of the document was his. However, appellants put forward testimony that the terms of the document were "not in conformity with Mr. Andrews' customary practice and other matters were as asserted indicating a lack of genuineness of the [document]." *Id.* Affirming the trial court's imposition of reasonable attorneys' fees, the Fifth Circuit held that the record "demonstrates the utterly unjustified dilatoriness of appellants in refusing to admit the genuineness of an important document, without any reasonable expectation of prevailing." *Id.* at 443.

Lastly, in *Akins v. McKnight*, 13 F.R.D. 9 (N.D.Ohio 1952), plaintiff refused to admit that his patent was limited to a particular design feature. In holding that his denials were unfounded, the court noted:

> Had the plaintiff made full and frank admissions regarding the prior art and accused devices in response to defendant's requests, a trial of this lawsuit might possibly have been avoided.... It is significant that plaintiff was able at trial to admit some of the matters covered by defendant's requests under Rule 36, and, indeed, the finding of non-infringement by the court was based in part upon the admissions at trial.

13 F.R.D. at 11 (citation omitted). Holding plaintiff liable for expenses incurred, the court imposed an award for attorneys' fees.

It is true that plaintiff in this case, in contradistinction to the authorities discussed above, did not admit matters at trial that had been the subject of defendant's requests for admissions. However, these cases are similar in that the failure of each of the sanctioned parties to make full and frank disclosures resulted in expense, waste, and delay.

1. Plaintiff's failure to admit that it exercised no supervision over the expenditures and accounts of local congregations.

As plaintiff's literature and declarations attested to the financial independence of the local chapters, plaintiff reasonably could not believe that it would prevail at trial in asserting that ULC officials exercised supervision of local charter accounts. Plaintiff's citation to the declarations of Manzanita Lowarch and Kirby Hensley do not substantiate its contention that ULC exercised control over the accounts of local congregations. To the contrary, plaintiff's officers and counsel joined in a colloquy during the deposition of Mrs. Lowarch and suggested that local congregations could empty their accounts without ULC's approval or knowledge. Deposition of Man-

zanita Hensley Lowarch, Feb. 27, 1987, at 25–26.

Further, the sworn statements of Manzanita Lowarch and Lida Hensley detail that ULC–Modesto was called on to cover amounts drawn against local accounts for which there were insufficient funds, a fact that belies their contention that there was meaningful "control" over these accounts. Declaration of Manzanita Hensley Lowarch, July 31, 1987, ¶ 16; Declaration of Lida G. Hensley, July 30, 1987, ¶¶ 4–9.

Lida Hensley stated in her declaration that since ULC's inception in 1962 she has ordered the closure of 219 bank accounts belonging to local congregations—one of which resulted in the transfer of $1,861.03 to ULC coffers in Modesto, California. Lida Hensley Declr. ¶ 7. However, as defendant points out, plaintiff repeatedly has failed to substantiate these assertions despite orders compelling production.

2. Plaintiff's failure to admit that it did not know whether contributions disputed to the IRS had been made or whether the funds were used for exempt purposes.

Plaintiff's refusal to make letters that it had written to the IRS available during discovery resulted in its having defendant's version of the facts held conclusively against it and thus cannot be found to have made "full and frank" admissions.

3. Plaintiff's failure to admit that it had a royalty agreement with Universal Harmony.

Similarly, as the documents plaintiff cites as rebutting the charge of its royalty agreement contain no reference to this topic at all, plaintiff's response cannot be considered either full or frank.

Since the matters on which defendant sought admission in Nos. 4, 22, 24, and 30 were later proved by uncontroverted evidence on summary judgment, the requirements necessary to justify Rule 37(c) sanctions have been met. *See Dorey v. Dorey*, 609 F.2d 1128, 1133–35 (5th Cir.1980).

In support of its claim for attorneys' fees in the amount of $11,630.00 and travel expenses of $332.00, defendant reconstructed the hours recorded by its counsel to reflect the time attributable to discovery and making proof on only the four requested admissions. Plaintiff makes no comment on defendant's methodology other than to complain that discovery for which fees and expenses are claimed was unnecessary. Since this discovery product formed a partial basis of defendant's renewed motion for summary judgment upon which defendant prevailed, plaintiff's objection is meritless.

Out of an abundance of caution, the court has scrutinized defendant's methodology and finds that it conservatively errs on understating the claimed fees. For example, defendant calculates its counsel's hourly rate based on a salary that does not take into account a promotional increase. At the loaded hourly rate of $46.52 (salary alone of $18.56), the Government could have retained a plumber or an attorney interested in practicing tax law from the government perspective, and it can be observed fairly that the record in this case profited from the Government's decision to employ the latter. However, the point is that nothing suggests that the amount charged is unreasonable, and defendant has provided adequate justification for the amount it claims as a reasonable award of expenses.

## CONCLUSION

Based on the foregoing, an award of expenses is justified, and the amount claimed has been shown to be reasonable. Defendant's motion is granted, and the Clerk of the Court shall enter judgment for defendant in the amount of $11,962.00.

IT IS SO ORDERED.