# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3102

_____

Border State Bank,  N.A.,

          Plaintiff - Appellant,

     v.

AgCountry Farm Credit Services,
FLCA; and AgCountry Farm Credit
Services, PCA,

          Defendants - Appellees.

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: May 12, 2008
Filed: August 1, 2008

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Border State Bank, N.A. (Bank) brought this action asserting that defendants AgCountry Farm Credit Services, FLCA (FLCA) and AgCountry Farm Credit Services, PCA (PCA) had improperly retained sale proceeds in excess of their secured interests in the property sold and had failed to provide notice to the Bank of the sale and an accounting of the proceeds.  The parties filed cross motions for summary

judgment, and the district court[1] granted defendants' motion. The Bank appeals, and we affirm.

The Bank, PCA, and FLCA all claimed security interests in the assets of Dutch Friendship Farms, L.L.P. (Dutch Farms), a dairy farming operation in Lancaster, Minnesota. The Bank's security interest was established by a promissory note for $300,000 which it and Dutch Farms executed in 2005. A security agreement accompanying the note gave the Bank a secured interest in assets belonging to Dutch Farms which included its inventory, any accounts and rights to payment it might have, and farm products such as livestock, crops, and agricultural supplies.

PCA and FLCA claimed security interests in the Dutch Farms assets based on loans each had earlier made to River Ridge Dairy, L.L.P. (River Ridge). Between 1998 and 2001 River Ridge borrowed a total of almost $1.8 million from PCA and almost $3.0 million from FLCA. Under the security agreement for those loans, River Ridge granted PCA and FLCA security interests in essentially all of its assets, including livestock, equipment, accounts, and agricultural supplies and products, and PCA and FLCA each also obtained a mortgage on the land belonging River Ridge. River Ridge defaulted on its obligations to PCA and FLCA in early 2003 and eventually ceased business operations entirely.

Some of the River Ridge principals together with a new investor formed Dutch Farms, another dairy farming business which was to operate on River Ridge's land. After it became clear that River Ridge would not be able to pay all its debts, it entered into a forbearance agreement with its personal guarantors, FLCA, PCA, and Dutch Farms in January 2003. As described in that agreement, River Ridge deeded its land back to FLCA and PCA, and they agreed to allow Dutch Farms to purchase most of

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

the River Ridge assets and lease the farm. The agreement provided that payments were to be made to reduce the principal and interest on River Ridge's debt to PCA to $1.4 million. Dutch Farms was to assume the PCA debt and grant PCA a first priority security interest in its personal property, including its livestock and equipment. The forbearance agreement also stated that the River Ridge "personal property collateral" – primarily livestock and equipment – would be "sold subject to the security interests of Lender," and lender was defined to mean PCA and FLCA collectively.

Later in 2003 Dutch Farms bought the assets of River Ridge. The asset purchase agreement stated that the purchase price was $1.4 million and was paid by Dutch Farms' assumption of "that debt and obligation owing to AgCountry." Although FLCA did not provide any loans directly to Dutch Farms, an addendum to the asset purchase agreement provided that "[a]ll Assets shall be transferred from Seller [River Ridge] to Buyer [Dutch Farms] subject to the security interests of . . . AgCountry Farm Credit Services, FLCA."

After encountering its own financial problems, Dutch Farms defaulted on its loans from the Bank and PCA. At the end of 2005 it decided to close its business and liquidate its assets, which sold for approximately $1.7 million.[2] At the time of sale Dutch Farms owed PCA more than $1.4 million, and the principal and interest on the FLCA loans to River Ridge exceeded $2.6 million. PCA and FLCA obtained the proceeds of the sale and applied them first to the PCA loans and the expenses of the sale. The remaining balance was applied to the FLCA loans, but the funds were insufficient to satisfy that debt.

---

[2]There is a discrepancy in the record about how much money was received for Dutch Farms' livestock. A Vice President of FLCA and PCA stated in a 2007 affidavit that the net proceeds from the dairy herd were $1,437,117.02, but in a 2006 letter the same Vice President wrote that the amount received was $1,482,687.81. These differences are not material here because of the large outstanding debts to FLCA and PCA.

-3-

The Bank brought this action against PCA and FLCA, contending that it was entitled to a portion of the proceeds from the Dutch Farms assets and an accounting. It also alleged that PCA and FLCA had failed to give it notice of the disposition of the assets as required by Minnesota statute, and it raised claims of unjust enrichment and conversion. The defendants moved for summary judgment, and the Bank responded with a cross motion for partial summary judgment. The district court granted the defendants' motion, and the Bank appeals. The Bank admits that PCA had a senior security interest in Dutch Farms' assets and does not challenge the payment of the PCA debts. Rather, it argues that payment of the FLCA debts was improper because FLCA did not have a valid security interest in the Dutch Farms assets. The Bank also contends that the district court erred in determining that FLCA and PCA were not obligated to give it notice of the liquidation sale and in denying its request for an accounting. In reply, FLCA and PCA urge us to affirm in all respects.

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Amrine v. Brooks, 522 F.3d 823, 830 (8th Cir. 2008). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Doe v. Dep't of Veterans Affairs, 519 F.3d 456, 460 (8th Cir. 2008). In order to survive a motion for summary judgment, the nonmoving party has the burden of setting forth specific facts to show a genuine issue for trial, and "'[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions'" will not suffice. Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citation omitted). If "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

The Bank argues that there is a genuine issue of material fact about whether FLCA had a valid security interest in Dutch Farms' assets when those assets were sold,

pointing out that FLCA never loaned money directly to Dutch Farms. FLCA and PCA respond that the district court correctly determined that FLCA had a security interest in the proceeds from the sale of the contested assets, and that the Bank was not entitled to a distribution of those proceeds.

FLCA had a security interest in River Ridge's assets, and Dutch Farms purchased those assets subject to the FLCA security interest. The forbearance agreement signed by River Ridge, Dutch Farms, and FLCA expressly provided that the River Ridge "Personal Property Collateral" would be "sold subject to the security interests of Lender." It defined the collateral to include property in which FLCA had a security interest and defined "lender" to include FLCA. An addendum to the asset purchase agreement specified that "[a]ll Assets shall be transferred from [River Ridge] to [Dutch Farms] subject to the security interests of . . . FLCA . . . in the Assets."

Under Minnesota law, FLCA's security interest in the River Ridge collateral continued after the collateral was purchased by Dutch Farms. When Dutch Farms sold that property, FLCA's interest attached to the proceeds of the sale. See Minn. Stat. § 336.9-315(a)(1) ("a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien"); id. § 336.9-315(a)(2) ("a security interest attaches to any identifiable proceeds of collateral"). Thus, FLCA's security interest in the property of River Ridge could be traced to the proceeds from the sale of the Dutch Farms assets.

The Bank asserts that there is evidence that FLCA's debt was satisfied after River Ridge ceased operations, and it submits that this evidence created a factual issue which precluded summary judgment. In support, it refers to an affidavit by Michael Muston, one of the principal investors in and personal guarantors of River Ridge and Dutch Farms. Muston averred that "River Ridge (via its personal guarantors, including me) paid an amount in excess of $1,000,000 to AgCountry Farm Credit

Services."[3]  The affidavit does not state when the alleged payments were made, however, or whether FLCA received any portion of those funds.  Furthermore, evidence in the record indicates that more than $2.6 million was still owed on the FLCA loans when the Dutch Farms collateral was sold.  Because a rational trier of fact could not infer from the Muston affidavit that FLCA had received $2.6 million from the River Ridge personal guarantors after the Dutch Farms assets were sold, or that a lesser amount was owed and paid, the affidavit did not create a triable issue of fact about whether the FLCA debt was satisfied.

The Bank also argues that a letter to its president from a senior loan officer with AgCountry Farm Credit Services implied that FLCA's debt was satisfied.  The 2003 letter reads, "[t]he long term assets of [River Ridge Dairy] were deeded back to AgCountry and in turn, AgCountry has entered into a lease arrangement with Dutch Friendship Farms on the facilities over a four (4) year period. AgCountry came up substantially short on the long term loans but agreed this was the best method to minimize our best options [sic] to net the most dollars back to AgCountry at the present time."  The letter does not state that the debts to FLCA were satisfied through the deed back of the land, and at the summary judgment stage the Bank was only entitled to those inferences which might be made without resorting to speculation. See Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005). Moreover, the forbearance agreement controverts any suggestion that the deed back

---

[3]The Muston affidavit also stated that "FLCA agreed to accept the deed to the River Ridge land back in satisfaction of its debt," but the district court properly declined to rely on this statement because it contradicted the unambiguous terms of the forbearance agreement. See Klawitter v. Straumann, 255 N.W.2d 407, 411 (Minn. 1977) ("[T]he excluded testimony would be an attempt by [a party] to say that while they agreed in writing to one thing, they meant another. This is precisely the type of evidence intended to be excluded by the parol evidence rule. . . ."); see also Hruska v. Chandler Assocs., Inc., 372 N.W.2d 709, 713 (Minn. 1985) ("[W]hen parties reduce their agreement to writing, parol evidence is ordinarily inadmissible to vary, contradict, or alter the written agreement.").

satisfied the FLCA debt, stating that "[e]ven if Lender acquires the Mortgaged Property by recordation of the Deed and/or foreclosure of the Mortgages, this shall not satisfy the Indebtedness other than with respect to the proceeds realized upon sale of the Mortgaged Property, which proceeds shall be applied to the Indebtedness," and there is no evidence that the land was sold. Because the forbearance agreement is unambiguous, the 2003 letter would not be admissible to "vary, contradict, or alter the written agreement." Hruska v. Chandler Assocs., Inc., 372 N.W.2d 709, 713 (Minn. 1985).

At oral argument the Bank asserted that FLCA had not properly perfected its security interest in Dutch Farms' assets. We will not consider this contention since it was not addressed by the district court or developed in the appellate briefs. See Bearden v. Lemon, 475 F.3d 926, 929-30 (8th Cir. 2007) (court of appeals does not ordinarily consider issues which district court did not rule upon); Meyers v. Starke, 420 F.3d 738, 743 (8th Cir. 2005) ("To be reviewable, an issue must be presented in the brief with some specificity."). We also need not address the Bank's arguments that FLCA had no security interest in the collateral under its lease with Dutch Farms since we have already determined that it did have a security interest in respect to the forbearance, security, and asset purchase agreements.

The Bank next argues that the district erred in concluding that Minnesota statute § 336.9-611 did not require FLCA and PCA to give it notice of the disposition of the Dutch Farms assets. FLCA and PCA answer that they had no statutory obligation to notify the Bank of the sale since they themselves did not sell the Dutch Farms livestock or equipment, but the Bank asserts that it produced sufficient evidence that FLCA and PCA controlled the sale of the assets to create a triable issue of fact as to whether they were required to give it advance notice of the sale. FLCA and PCA respond that the Bank was not injured by any alleged failure on their part to provide advance notice of the sale because it was actually aware of the sale before it occurred.

In Minnesota a secured party may sell or otherwise dispose of collateral following default, see Minn. Stat. § 336.9-610, but (subject to certain exceptions not relevant here) it "shall send . . . a reasonable authenticated notification of disposition" to specified persons, including any other secured party with a properly perfected interest. Minn. Stat. § 336.9-611. Section 336.9-611 only addresses a secured party which disposes of collateral, however, and it does not mention a debtor which sells encumbered property, as Dutch Farms did here. Although the Bank asserts that FLCA and PCA controlled the sale of the Dutch Farms assets, its evidence only shows that representatives of "AgCountry" discussed sale options with Dutch Farms and others and that "AgCountry" required Dutch Farms to agree that all proceeds from the primary means of selling the livestock would be remitted directly to it.

Neither FLCA nor PCA foreclosed or possessed Dutch Farms' livestock or equipment prior to the sale. Since the Bank has not produced sufficient evidence to show that FLCA or PCA disposed of the contested assets as required by § 336.9-611, a reasonable jury could not return a verdict in its favor and no genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 248-49; Sokol & Assocs., Inc. v. Techsonic Indus., Inc., 495 F.3d 605, 610 (8th Cir. 2007). We conclude that the district court did not err by granting FLCA and PCA's motion for summary judgment on the alleged violations of § 336.9-611.

The Bank finally argues that the district court erred in granting summary judgment to FLCA and PCA on its request for an accounting because the movants had not produced adequately detailed information about how the liquidation proceeds were applied to their debts. FLCA and PCA reply that they provided the Bank with the accounting it originally sought by supplying information about the total proceeds received from the Dutch Farms assets subject to its lien. How the proceeds were specifically applied to their debt is immaterial according to FLCA and PCA since the Bank has not disputed the balance owed on their loans and the proceeds were insufficient to satisfy those amounts.

An accounting is an extraordinary remedy usually available only when legal remedies are inadequate.  See Lefkowitz v. Citi-Equity Group, Inc., 146 F.3d 609, 611 (8th Cir. 1998), citing Bradshaw v. Thompson, 454 F.2d 75, 79 (6th Cir. 1972).  The Bank's amended complaint requested "a complete accounting of all funds collected and property seized related to the foreclosure, repossession and sale" of the contested property.  During discovery the Bank had the opportunity to obtain information about the funds FLCA and PCA had collected from Dutch Farms, and FLCA and PCA produced a letter to one of Dutch Farms' managing partners which listed the funds received from the sale of its collateral and how those proceeds were applied to its debts, as well as an affidavit listing the amounts due and collected.  The Bank's attorney deposed the Vice President who had written the letter and asked for clarification of some of the figures, and the district court extended the discovery deadline based on a stipulation by the Bank, PCA, and FLCA.

Although the Bank now highlights discrepancies in the information produced by FLCA and PCA and argues that the information produced is not sufficiently detailed, it does not explain why these deficiencies could not have been adequately addressed through discovery.  Furthermore, the discrepancies are not material since there is no evidence that the amount collected by FLCA and PCA (at most slightly over $1.7 million) exceeded the amount due on the debts to them (in excess of $4 million).  We conclude that the district court's denial of an accounting was not error.  See Lefkowitz, 146 F.3d at 611; see also Bradshaw, 454 F.2d at 79.

For these reasons we affirm the judgment of the district court.

_____