A.G. ANDRIKOPOULOS, Dan Unger, William Prewett, Harry Simmons, Jr., Paul Conner, Robert Cohen and Paul Runge, individually; and Riva Ridge North Chalets Condominium Association, a Colorado non-profit corporation, Plaintiffs-Appellees,

and

Meryle L. Cohen and Elda Unger, individually, Additional Plaintiffs-Appellees,

v.

The BROADMOOR MANAGEMENT COMPANY, INC., a Colorado corporation, and Ross E. Davis, individually, Defendants-Appellants.

LODGE MANAGEMENT CORPORATION, a Colorado corporation, Defendant and Counterclaim Plaintiff-Appellant,

v.

Franklin D. CRAWFORD, W.B. Wiggins and Eunice H. Smith, Counterclaim Defendants-Appellees.

No. 81CA0252.

Colorado Court of Appeals, Div. I.

June 30, 1983.

As Modified on Denial of Rehearing Aug. 4, 1983.

Constantine & Prochnow, P.C., Neil E. Lipson, Thomas J. Constantine, Englewood, for plaintiffs-appellees.

Roath & Brega, P.C., Charles F. Brega, Robert C. Kaufman, Denver, for defendants-appellants and counterclaim plaintiff-appellant.

No appearance for counterclaim defendants-appellees.

BERMAN, Judge.

Defendants appeal a judgment which awarded the Riva Ridge North Chalets Condominium Association (Association) damages which compensated it for overcharges made by defendants for management of the Association members' condominiums over approximately a ten-year period. We affirm.

The Lodge at Vail complex currently is composed of five buildings, one of which is named "Riva Ridge North Chalets" (RRN). The RRN building contains ten units of a total of over 200 in the entire complex. The buildings are jointly managed, but each building has a separate contract with the management company.

In 1968, Ross Davis and Walter Stalder purchased the Lodge at Vail from Vail Associates. In effect, this contract gave Davis and Stalder title to only one building, the hotel, and to all outstanding shares of the company which managed the remainder of the individually owned units. This contract was signed by Davis and Stalder as individuals. Its terms obligated Davis and Stalder to assume the obligations set out in an earlier "management agreement" with the Association. Shortly after the agreement was executed, Davis' and Stalder's ownership interest was transferred to Lodge Properties, Inc., and, as "joint venturers" in the Lodge Investment Company, they entered into a contract with the Broadmoor Management Company, Inc., which transferred all management and rental functions to the Broadmoor. Lodge Investment Company was subsequently incorporated under the name Riva Ridge Chalets Management Corporation (Corporation), and then, later, as Lodge Management Corporation (LMC).

438

The Association, which is a Colorado non-profit corporation, and the individual owners of RRN units signed a management agreement with the Corporation in 1969. In return for management and rental agent responsibilities, the Corporation was to receive for each unit $30 per month, 40% of all rental commissions, and, for promotional purposes, three days' use of the unit and an amount equal to one day's rental during the prime season. Ross Davis signed the contract on behalf of the Corporation.

From 1969 until the date of judgment by the trial court, the Corporation, and later, LMC, charged the Association for all common expenses, including resort association dues, housekeeping and security services, and advertising, based on an apportionment of the total square footage of all units in the entire complex. In 1979, the Association and a number of individual owners (plaintiffs) brought suit against LMC, Davis, and the Broadmoor claiming that the charges were improper. Stalder was not named as a defendant. The plaintiffs contended that the common expenses were to be paid out of the monthly fee, the 40% rental commissions and the charge equivalent to one day's rent during the prime season.

The defendants counterclaimed, praying for, *inter alia,* a "declaration of the rights, duties and obligations of Lodge, the Association, [and] the individual plaintiffs...." and for any unpaid 40% rental fees. The defendants also moved for dismissal based on the plaintiffs' failure to join the three other current owners of units in RRN, all former owners of the units, and those holding units in joint tenancy with plaintiffs. The parties stipulated to the joinder of all joint tenants, and the trial court entered a rule and order whereby they were made parties. The three other current owners were joined by defendants as counterclaim defendants.

At trial, the plaintiffs' accountant was qualified as an expert in accounting procedures, and was allowed to testify as to the amount of the overcharges over the length of the contract. The trial court, after ex-

amining the documents and hearing the accountant's testimony, concluded that the accountant's calculation of overcharges was correct. The court awarded damages in that amount to the Association, plus prejudgment interest, against LMC, Davis, and the Broadmoor, jointly. The Association was ordered to distribute the award "among the individual unit owners proportionate to their percentage ownership in the Riva Ridge North Condominium Building."

I.

Defendants first contend on appeal that the trial court erroneously interpreted the management and rental agreement entered into between the Association and the Corporation in 1969. We disagree.

Defendants maintain that the trial court erred in charging to defendants two groups of expenses: (A) those which it found were chargeable entirely to the Corporation, and (B) overcharges due to improper calculation of the Association's expenses.

A.

The trial court found that certain management expenses, including the expense of operating the hotel building, were not chargeable directly to the owners, but should have been absorbed through part of the 40% rental income defendants receive from each member of the Association. This finding was based on its interpretation of ambiguous provisions of the management and rental contract, and we do not find the trial court's interpretation to be unreasonable. Moreover, testimony by members of the Association as to their understanding of those ambiguous provisions provided further support for the trial court's conclusions.

B.

Since 1969, LMC had charged certain expenses to each unit based on its percentage of the total square footage in the complex. The trial court found that LMC should not have pooled these expenses among all the units. Rather, it found that

the Association should have been charged only the actual cost of providing such services to RRN because no provision was made for pooling in the management contract.

We have reviewed the management contract and also find the provisions regarding calculation of expenses to be ambiguous. And, since there is support in the record for the factual findings of the trial court as to the meaning of those provisions as intended by the parties, we will not disturb those findings on appeal. *Linley v. Hansen,* 173 Colo. 239, 477 P.2d 453 (1970); *see also Palipchak v. Kent Construction Co.,* 38 Colo. App. 146, 554 P.2d 718 (1976).

## II.

The defendants also contend that the trial court erred in finding that the Association could represent the owners in this law suit. We disagree.

■ Where a condominium association is a signatory to a contract, it is a proper party to a suit for damages based on that contract. *Ireland v. Wynkoop,* 36 Colo.App. 205, 539 P.2d 1349 (1975). Moreover, here, the Association had been granted the power through the Association by-laws to maintain a bank account for the owners and to collect and disburse all funds necessary for the management of the RRN building. Each owner was required to be a member of the Association. Thus, the Association was in an ideal position to represent all of the owners and to disburse the award among them.

Defendants contend that *Summerhouse Condominium Association, Inc. v. Majestic Savings & Loan Ass'n,* 44 Colo.App. 495, 615 P.2d 71 (1980) would require each individual owner to be a party to this suit and would preclude the Association from representing the owners in a breach of contract suit. However, *Summerhouse* is readily distinguishable from the case at bar. First, in *Summerhouse,* the Association was not a party to the contract. And, in that case, the suit was brought for breaches of individual purchase and sale contracts which did not directly affect any interests of the Association itself. Here, a breach of a management contract resulted in a direct depletion of Association funds.

## III.

Defendants next contend that the trial court erred by relying exclusively on the testimony of the plaintiffs' expert witness to interpret the management and rental agreement. We find this argument to be based on a mischaracterization of the evidence.

■ First, plaintiffs' expert, a certified public accountant (CPA), was properly qualified as an expert in accounting. The record reveals that he testified only regarding his professional opinions as a CPA "which have to be made by him in the performance of his duties ...." A trial court has discretion in determining the qualifications of an expert and the admissibility of expert evidence. *Stark v. Poudre School District R–1,* 192 Colo. 396, 560 P.2d 77 (1977); *see also* C.R.E. 702. That discretion was properly exercised here.

■ Second, the trial court clearly indicated that it was not relying solely on the expert's testimony and that it would independently develop its own legal conclusions based on all of the evidence. Thus, we do not consider the accountant's testimony to be inadmissible, nor do we conclude that the trial court placed undue reliance on that testimony.

## IV.

The defendants also argue that the plaintiffs were not entitled to relief in the nature of an accounting, nor were they entitled to expert witness fees for their accountant's services. We disagree.

Defendants claim that plaintiffs' prayer for an accounting was simply a "ruse to obtain reimbursement of their trial preparation costs." This fundamentally mistates the nature of the accounting ordered by the trial court.

In this case, whether the examination of defendant's books was done by plaintiffs' expert as part of the discovery process or

whether it was ordered by the court as an accounting is immaterial. The plaintiffs are entitled to reimbursement for such expenses either as reimbursement of expert witness fees, or as reimbursement for the costs of an accounting.

██ Although an accounting is an "extraordinary remedy," it may be ordered if the "plaintiff [is unable] to determine how much, if any, money is due him from another." *Bradshaw v. Thompson,* 454 F.2d 75 (6th Cir.1972). The record reveals that defendants' books were kept inadequately and were in such disarray that it was necessary for an accountant to examine them in detail to determine the amount due to plaintiffs. Under these circumstances, we perceive no error in the trial court's order.

And, here, the parties stipulated that an award of $5,025 was reasonable for the expert's accounting services, and the court ordered that judgment enter in that amount. Under these circumstances, we fail to see how defendants can claim that such fees were erroneously awarded.

## V.

██ Defendants next argue that plaintiffs should not have been allowed to present evidence regarding the individual liability of Davis because this issue was not properly pleaded. We disagree.

Defendants cannot claim that either surprise or prejudice resulted from the introduction of evidence regarding Davis' individual liability. Plaintiffs' pre-trial statement clearly identified one of the issues as "[w]hether Ross Davis is individually responsible and liable to plaintiffs for such damages as proved at trial." Under these circumstances, the evidence was properly admitted. *See* C.R.C.P. 15(b); *Isbill Associates, Inc. v. Denver,* 666 P.2d 1117 (Colo. App.1983).

## VI.

Defendants further contend that the trial court erred, based on the documents introduced at trial, in concluding that Davis had assumed individual liability. We concur with the trial court's interpretation of those documents.

██ In December of 1968, Davis and Stalder purchased the Lodge at Vail complex, including RRN. The purchase and sale agreement entered into at that time was signed by Davis and Stalder as individuals, and they thereby agreed to "assume the obligations of the agreement with the Riva Ridge Chalets ... Condominium Association (Condominium Agreement) and to carry out the provisions of this Agreement, property owner's agreement and Condominium Agreement." We hold that the Association was a third-party beneficiary to the above agreement, *see Fourth & Main Co. v. Joslin Dry Goods Co.,* 648 P.2d 178 (Colo. App.1982), and that Davis, by signing as an individual, became personally liable for breach of the agreement with the Association.

Davis argues that the 1969 contract between the Association, the owners, and his newly-formed corporation illustrates that he did not intend to assume individual liability for breach of any management agreement. We cannot accept Davis' reasoning.

██ The subsequent contract contains no reference to the previous management contract mentioned in the purchase and sale agreement. Thus, since no attempt was made to negate or even to modify Davis' previous obligations undertaken as an individual, we view the subsequent agreement as an additional promise to undertake corporate liability as well as individual liability. Because there is no mention of the 1968 contract in the 1969 contract, nor does the 1969 contract contain any other expression of intent to substitute the new contract for the old, the subsequent contract cannot be deemed a novation substituting the corporation for Davis as the obligor. *Lampley v. Celebrity Homes, Inc.,* 42 Colo.App. 359, 594 P.2d 605 (1979). *See also Restatement (Second) of Contracts* § 424; *S. Williston, Contracts* § 1865 (3d ed. 1972). In sum, an individual cannot escape responsibilities properly undertaken pursuant to a contract simply by a subsequent incorporation and a second contract,

unless there is a clear expression of intent by the parties that the new contract is intended to replace the old.

## VII.

Defendants also argue that the Broadmoor was not individually liable to plaintiffs. We disagree. Because the documentary evidence establishes that the Broadmoor entered into a joint venture agreement with Davis to manage the Lodge at Vail Complex, we hold that the Broadmoor was jointly liable with Davis for any damages sustained because of a breach of Davis' agreement with the Association.

## VIII.

Defendants further contest the trial court's award of prejudgment interest to plaintiffs. We reject this argument in accordance with *Isbill Associates, Inc. v. Denver, supra.*

We have examined the record and find appellants' remaining contentions of error to be without merit.

Judgment affirmed.

STERNBERG and COYTE,* JJ., concur.