United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 18, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 02-21378

———————————

HECTOR GARCIA; ET AL

Plaintiffs

HECTOR GARCIA; INLAND OCEAN INC

Plaintiffs - Appellants

v.

KOCH OIL COMPANY OF TEXAS INC; KOCH GATHERING SYSTEMS INC;
KOCH SERVICE INC; KOCH OIL COMPANY; KOCH INDUSTRIES INC;
KOCH PIPELINES INC; PIPELINE COMPANY LP

Defendants - Appellees

———————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas, Houston

———————————————————————————————

Before KING, Chief Judge, DENNIS, Circuit Judge, and LYNN,[*]
District Judge.

KING, Chief Judge:

This case comes to us on an interlocutory appeal under 28

U.S.C. § 1292(b).  At issue is the proper way to measure the

amount in controversy, required for federal diversity

jurisdiction under 28 U.S.C. § 1332, in the context of a suit

———————————————

[*]     District Judge for the Northern District of Texas,
sitting by designation.

1

seeking, <u>inter</u> <u>alia</u>, an equitable accounting.  The district court held that the defendants' costs for performing the accounting may be considered in calculating the amount in controversy.  We reverse.

### I. STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

On September 3, 1999, Plaintiffs Hector H. Garcia and Inland Ocean, Inc.[1] filed a putative class action in the 49th Judicial District Court of Zapata County, Texas, on behalf of all Texas royalty and leasehold interest holders "from whom [the defendants] purchased oil and/or condensate between January 1, 1975 and December 31, 1989."  Alleging that the defendants surreptitiously failed to reimburse them for certain oil and gas overages, the plaintiffs sought (1) an equitable accounting to determine whether any part of the overages could be attributed to individual plaintiffs' well sites, (2) restitution damages, and (3) attorney's fees and costs.  The plaintiffs did not demand a specific amount of monetary damages, as the Texas Rules of Civil Procedure prohibit a plaintiff from doing so.  <u>See</u> TEX. R. CIV. P. 47(b).

The defendants timely removed the case to the United States District Court for the Southern District of Texas under 28 U.S.C. § 1441(b) based on federal diversity jurisdiction, asserting that

---

[1]    A third plaintiff, the Estate of Alice Barnes, was voluntarily dismissed from the case without prejudice on January 2, 2002, and will not be discussed in this opinion.

the amount in controversy exceeds $75,000 and that the parties are diverse.[2]  See 28 U.S.C. § 1332 (2000).  The plaintiffs then filed a motion to remand claiming that the defendants had failed to proffer evidence that the requisite amount in controversy had been met.  The district court denied the motion, however, when the defendants produced an affidavit stating that it would cost more than $75,000 per plaintiff to perform the requested accounting.

On agreement of the parties, the case was transferred to the Houston Division of the district court.  The plaintiffs filed a second motion to remand on the basis that the costs of performing an equitable accounting should not be considered part of the "amount in controversy" under § 1332.  On August 27, 2002, a magistrate judge recommended that the plaintiffs' motion be denied, because the defendants' affidavit "makes it clear that the costs of an accounting for even a single claimant in this matter would exceed the jurisdictional amount."  The district

---

[2]     In their notice of removal, the defendants also claimed that Koch Oil Company of Texas, Inc. had been fraudulently joined by the plaintiffs.  The district court agreed, and this issue has not been preserved on appeal.  In addition, the defendants asked the district court to attribute all of the plaintiffs' attorney's fees to the named class representatives in order to calculate the amount in controversy.  The defendants have since conceded, however, that class action attorney's fees cannot be aggregated in this manner.  See Coughlan v. Wellcraft Marine Corp., 240 F.3d 449, 455 n.5 (5th Cir. 2001) (noting that, for jurisdictional purposes, "[t]he standard approach to awards of attorney's fees in a class action context is to distribute them pro rata to all class members, both named and unnamed").

3

court subsequently adopted the magistrate's findings in full and denied the motion to remand. At the plaintiffs' request, however, the district court stayed the case pending an interlocutory appeal to this court on the following controlling question of law: "In a class action seeking damages and an accounting, assuming diversity, [may] accounting costs to defendants in a range of $322,800 to $899,400 for examining the claim of a single plaintiff meet the amount in controversy requirement of the diversity statute?" We hold that they may not.

## II. DISCUSSION

### A. Standard of Review

We review the district court's denial of a motion to remand for lack of subject-matter jurisdiction de novo. Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1336 (5th Cir. 1995); see also Webb v. Investacorp, Inc., 89 F.3d 252, 255 (5th Cir. 1996) (explaining that removal is an issue of statutory construction).

### B. Burden of Proof

In resolving this question, we recognize that "[t]he intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). Thus, in § 1332 Congress instructs that a suit between diverse parties may be

4

adjudicated in a federal forum only if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000. St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998). The question in this case is whether the second burden has been met. In St. Paul Mercury Indemnity, the Supreme Court delineated the general method for measuring the amount in controversy: "[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." 303 U.S. at 288.

Here, the Texas Rules of Civil Procedure barred the plaintiffs from requesting a specific amount of damages in their state court petition. See TEX. R. CIV. P. 47(b). In a similar case, we held that "[w]hen the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds" the jurisdictional amount. De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993). This burden may be fulfilled in one of two ways. First, jurisdiction will be proper if "it is facially apparent" from the plaintiffs' complaint that their "claims are likely above [$75,000]." Allen, 63 F.3d at 1335. If the value of the claims is not apparent, then the

defendants "may support federal jurisdiction by setting forth the facts--[either] in the removal petition [or] by affidavit--that support a finding of the requisite amount." Id. Critically, the defendants may not aggregate the claims of different plaintiffs in order to satisfy the $75,000 jurisdictional amount in this putative class action. See Snyder v. Harris, 394 U.S. 332, 336-38 (1969).

To date, no party has attempted to establish that the defendants owe more than $75,000 in restitution damages to any individual plaintiff in this case. In fact, the value of each plaintiff's property, which was allegedly converted by the defendants, will not be determined unless the plaintiffs achieve the equitable accounting relief they have requested. Nonetheless, the district court held that defendants satisfied their burden of establishing that more than $75,000 is "in controversy" in this case. In a sworn affidavit, the defendants' accountant estimated that it will cost at least $300,000 per plaintiff to determine the amount of oil and gas condensate removed from each plaintiff's well sites during the years in question. The plaintiffs did not proffer any evidence disputing the cost of the equitable accounting,[3] and the court concluded

---

[3] In both their second motion to remand and their briefs on appeal, plaintiffs argue that it will not cost $75,000 to perform the equitable accounting. They have provided no record evidence to support this claim, however.

that the requisite jurisdictional amount was satisfied.

**C. Analysis**

Whether the district court's conclusion that the defendants have met their burden is correct, the plaintiffs argue, depends on the viewpoint by which the amount in controversy is measured. Plaintiffs claim that our precedent dictates that "the value of the plaintiff's right sought to be enforced must exceed the jurisdictional amount in order to confer federal jurisdiction." Vraney v. County of Pinellas, 250 F.2d 617, 618 (5th Cir. 1958); see also Alfonso v. Hillsborough County Aviation Auth., 308 F.2d 724, 727 (5th Cir. 1962) (refusing to consider the potential loss to defendants because "[t]he value to the plaintiff of the right to be enforced or protected determines the amount in controversy"). The plaintiffs argue that the instant case should be remanded to state court because the accounting is of no "value" to them; rather it is merely a means to discover the amount of restitution damages they are owed. Therefore, they believe that the monetary damages, not the accounting costs, are the true amount in controversy. The plaintiffs conclude that because the defendants have not alleged that any one plaintiff will recover more than $75,000, the jurisdictional amount is unsatisfied.

The defendants argue that it does not matter which viewpoint we follow. Alternatively, they urge us to follow an "either-

7

party viewpoint" for determining the amount-in-controversy requirement. Emphasizing that the accounting relief requested by the plaintiffs is equitable in nature, the defendants argue that we should consider the costs of providing that relief as the amount in controversy. According to the defendants, because it will cost them more than $75,000 to provide the equitable relief requested by each plaintiff, we must recognize these costs as a "pecuniary consequence" of the litigation that satisfies the jurisdictional amount.[4]

_____

[4] The defendants' argument is based on their assumption that we implicitly approved of the either-party viewpoint in Duderwicz v. Sweetwater Savings Association, 595 F.2d 1008 (5th Cir. 1979), when we followed the reasoning of a line of cases "support[ing] the proposition that the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover, but by the judgment's pecuniary consequence to those involved in the litigation." Id. at 1014. Contrary to the defendants' view, Duderwicz did not signal our acceptance of the "either-party viewpoint"; rather, it presented the question whether, in calculating the amount in controversy for a case involving a usurious contract, we should consider only the "interest already paid" on the contract or whether we should instead consider the total "interest contracted to be charged" over the lifetime of the contract. Id. at 1012, 1014. Critically, we noted that the answer to this question depended on "[s]tate law," which "defines the nature of the right plaintiff seeks to enforce." Id. at 1012 (emphasis added). The Court of Appeals for the Eleventh Circuit, which is also bound by Duderwicz, reads this case as we do and similarly concludes that it does not signal an "abandonment of the plaintiff-viewpoint rule" by the Fifth Circuit. Ericsson GE Mobile Communications, Inc. V. Motorola Communications & Elecs., Inc., 120 F.3d 216, 220 & n.13 (11th Cir. 1997).

We also disagree with the defendants' assertion that our decision in Webb indicates that this circuit no longer focuses solely on the plaintiff's viewpoint to determine the amount in controversy in cases seeking equitable relief. See Webb, 89 F.3d at 257 n.1 (stating specifically that the court's holding "does

We conclude that the defendants are correct when they argue that it does not matter from which viewpoint the amount in controversy is viewed.  Unlike the defendants, however, we believe that the costs of an equitable accounting should not be considered in determining the sum or value of the matter in controversy in the instant case.  These costs are collateral to the true object of the litigation: reimbursement to the plaintiffs for the oil and gas condensate allegedly converted by the defendants.

The defendants urge us to remember that the first form of relief demanded by the plaintiffs is an "equitable accounting." If a court eventually determines that the plaintiffs have established a right to receive this relief, then the defendants believe that they will be forced to bear the costs of calculating how much oil and gas condensate was taken from each of the plaintiffs' wells between 1975 and 1989.  Thus, the defendants argue, the litigation will necessarily resolve the controversy over whether the defendants are legally obliged to perform the accounting--essentially providing the plaintiffs the "value" of avoiding these expenses.  Because they have proffered affidavit evidence demonstrating that these costs exceed § 1332's

---

not violate the rule . . . that '[t]he value to the <u>plaintiff</u> of the right to be enforced or protected determines the amount in controversy'" (quoting <u>Alfonso</u>, 308 F.2d at 727) (alteration in original)).

9

jurisdictional amount, the defendants argue that they have met their burden to establish that federal jurisdiction is proper.

We do not agree. According to the Supreme Court, in cases seeking equitable relief "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). Here, the true object of the litigation is the payment of restitution damages to the plaintiffs. The equitable accounting is merely the means by which the value of the these damages may be calculated.

Our sister circuits have explained that an equitable accounting is simply a tool by which a plaintiff may shift the plaintiff's normal burden of discovery to the defendants. The Court of Appeals for the District of Columbia Circuit, for example, notes:

> An accounting is a species of compulsory disclosure, predicated upon the assumption that the party seeking relief does not have the means to determine how much-- or, in fact, whether--any money properly his is being held by another. The appropriate remedy, particularly where the determinations may be detailed and complex, is an order to account in a proceeding in which the burden of establishing the non-existence of money due to the plaintiff rests upon the defendant. Because of the very nature of the remedy, that burden cannot rest upon plaintiff, but must shift to the defendant once facts giving rise to a duty to account have been alleged and admitted.

Rosenak v. Poller, 290 F.2d 748, 750 (D.C. Cir. 1961); see also Bradshaw v. Thompson, 454 F.2d 75, 79 (6th Cir. 1972) ("An

10

accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another."). Thus the costs of producing the requested accounting are akin to the discovery costs incurred by the parties in every lawsuit. We hold that these "litigation costs" are simply not relevant to whether diversity jurisdiction exists under § 1332. See Ratliff v. Sears, Roebuck & Co., 911 F. Supp. 177, 179-80 (E.D.N.C. 1995) (holding that a defendant's discovery costs are not part of the amount in controversy).

Our decision comports with the manner by which we measure the jurisdictional amount in actions where a trustee is compelled to perform an accounting of the assets in a trust or when an administrator is ordered to account for the value of the property in an estate. In Davidson v. Blaustein, the court reviewed the law in this area and found that "[w]here affirmative relief is sought by an accounting, the amount in controversy is measured by the value of the res, the damage to the res sought to be redressed, or the monetary value of the complainant's share of the res which is distributable." 247 F. Supp. 225, 228 (D. Md. 1965) (citations omitted). This last metric is analogous to the jurisdictional amount in the case at hand. Without question, the true "amount in controversy" is the restitution award that the defendants may be required to pay to the putative class members as a consequence of removing more oil and gas condensate from the

plaintiffs' various well sites than the defendants previously reported.  Therefore, because neither party contends that the defendants owe more than $75,000 to any single plaintiff, the defendants have failed to demonstrate the existence of federal diversity jurisdiction.

### III. CONCLUSION

For the foregoing reasons, we find that defendants have not met their burden of proving that this case satisfies the amount-in-controversy requirement of § 1332.  Therefore, we REVERSE and instruct the district court to REMAND this case to state court.  Costs shall be borne by the defendants.