**PUCKETT MACHINERY COMPANY, INC.**

v.

**UNITED RENTALS, INC.**

**No. CIV.A. 3:04–CV–410BN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 29, 2004.

Peter Larkin Doran, Thomas Calvin Wells, Jeffrey M. Williams, Wells, Moore, Simmons & Hubbard, Jackson, MS, for Puckett Machinery Company, Inc., plaintiff.

John Albert Smyth, III, Charles Andrew Kitchen, Maynard, Cooper & Gale, PC, Birmingham, AL, for United Rentals, Inc., defendant.

*OPINION AND ORDER*

BARBOUR, District Judge.

Before the Court is Plaintiff's Motion to Remand. Having considered the Motion, Response, Rebuttal, attachments to each, and supporting and opposing authority, the

Court finds that the Motion is well taken and should be granted.

## I. Facts

Plaintiff, Puckett Machinery Company, Inc. ("Puckett"), hired a salesman, Stephen Waddell, while he was working for United Rentals, Inc. ("United"), a competitor. Before Puckett hired Waddell, he and United had entered into a covenant not to compete ("no compete agreement"). That no compete agreement is the overarching issue in this entire case.

Shortly after Waddell began work for Puckett, United sued Waddell for breach of the no compete agreement.[1] Anticipating that United might also file suit against Puckett, Puckett filed a Complaint in the County Court of Rankin County, Mississippi, seeking declaratory relief. Puckett specifically requested the following:

A. For a declaration from this Court that Puckett, based on the terms of the non-competition clause, was within its rights to hire Waddell, or alternatively, that the purported contract of employment between Waddell and United Rentals is so ambiguous as to render it unenforceable against Puckett;

B. For a declaration absolving Puckett from any liability in connection with its decision to offer employment to Waddell;

C. For a declaration that Puckett may continue to employ Waddell without the threat of further liability from United Rentals; and

D. For such other general relief as may be warranted in the premises.

Plaintiff's Complaint, pp. 5–6, ¶ 22, filed on April, 30, 2004, in the County Court of Rankin County, Mississippi, and attached as Exhibit A to Defendant's Notice of Removal, filed June 3, 2004. Although Puckett did use the boilerplate term "general relief" in its prayer for relief in its Complaint, it did not explicitly plead for monetary damages. In its pleadings before this Court, Puckett has explicitly stated that it does not seek monetary damages.

## II. Analysis

This Motion involves two issues.

I. When United filed its Notice of Removal, it purported to remove this case from the *Circuit* Court of Rankin County, when it was, in fact, filed in the *County* Court of Rankin County. This Court must decide whether this procedural defect mandates remand.

II. Puckett prays for declaratory relief, but not monetary damages. This Court must decide whether Defendant has produced sufficient evidence to prove, more likely than not, that the *value of the declaratory relief* Puckett seeks is worth more than $75,000.00.[2]

### II(A). Procedural Defect in Notice of Removal

■ When United filed its Notice of Removal, it explicitly stated "United Rentals, Inc. files this Notice of Removal to remove this action from the *Circuit* Court of Rankin County, Mississippi, wherein it

---

1. That action is pending in the United States District Court for the Southern District of Mississippi before Chief Judge Wingate, Civil Action No. 3:03–CV–418WS. United has filed a Motion to Consolidate the suit before this Court with the action before Judge Wingate. Magistrate Judge Nicols denied that Motion on August 9, 2004, finding that the present Motion to Remand should be adjudicated before ruling on the Motion to Consolidate.

Docket Entry No. 12. As a result of this Opinion, the Motion to Consolidate is denied.

2. The Court simply notes that because it was not facially apparent that the claims of Puckett exceeded $75,000.00, it looked to summary judgment type evidence to ascertain the amount in controversy. *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir.2003).

was filed as CV–2004–574." Notice of Removal, p. 1 (emphasis added). This contention was incorrect, as the case was actually filed in the *County* Court of Rankin County, Mississippi. In its Motion to Remand, Puckett argues this is a procedural defect mandating remand, although it cited no authority for the proposition. Plaintiff's Motion to Remand, p. 4, ¶ 16, dated June 28, 2004; *See also* Memorandum of Authorities in Support of Plaintiff's Motion to Remand, p. 1, n. 1, dated June 28, 2004.

On July 27, 2004, in an attempt to "correct a clerical error," United filed an Amended Notice of Removal, in which it changed the title of the Rankin County court from "Circuit Court" to "County Court." *Id.* at p. 1. Puckett objects to this amendment in its Objection to Amended Notice of Removal, filed August 3, 2004. Puckett argues the amendment is untimely, as United filed the Amended Notice of Removal more than 30 days after receiving the Summons and Complaint, which was on May 5, 2004. *Id.* at p.1, ¶ 2. Thus, Puckett argues, the original Notice of Removal was not corrected within the 30 day time limit of 28 U.S.C. § 1446(b), is therefore untimely, and its procedural defect mandates remand. Objection to Amended Notice of Removal, p. 1, ¶¶ 1 & 3.

The United States Court of Appeals for the Fifth Circuit has held, on facts similar to the present, that Fed. R. Civ. Proc. 60(a) permits district courts to correct clerical errors in the pleadings. *In re West Texas Mktg. Corp.*, 12 F.3d 497, 503–04 (5th Cir.1994)(stating that "[a] mistake correctable under Rule 60(a) need not be committed by the clerk or the court and Rule 60(a) is even available to correct mistakes by the parties"). The Fifth Circuit has stated the standard for applying Rule 60(a) as follows:

> In sum, the relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule. *As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed.* If, on the other hand, cerebration or research into the law or planetary excursions into facts is required, Rule 60(a) will not be available to salvage the [party's] blunders. Let it be clearly understood that Rule 60(a) is not a perpetual right to apply different legal rules or different factual analyses to a case. It is only mindless and mechanistic mistakes, minor shifting of facts, and no new additional legal perambulations which are reachable through Rule 60(a).

*Id.* at 504–505 (emphasis added).

In this case, the intentions of the parties are fully known. Both parties have fully briefed the issues related to removal and remand, and Puckett cannot justifiably argue that allowing for this correction will prejudice it in any manner. This is an instance where the Court should use a "judicial eraser" to correct the clerical error in the original Notice of Removal of United, or alternatively, to give effect to its Amended Notice of Removal. Pursuant to the authority of this Court under Fed. R. Civ. Proc. 60(a), this Court holds that the incorrect designation of court by United was merely a clerical error that should not result in remand of this action. Therefore, the Court need not discuss the timing arguments raised in the objection of Puckett to the Amended Notice of Removal.

### II(B). Calculating the Amount in Controversy

The remaining issue in this case is whether the amount in controversy re-

quirement of U.S.C. § 1332 is met. Section 1332(a)(1) states "[t]he district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

This issue is particularly problematic in cases such as this, in which both parties disagree about the value of the declaratory relief. The Supreme Court of the United States has held that the value of the declaratory relief is measured as follows: "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the *object* of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (citations omitted)(emphasis added) (holding that the "object" in that case was the *right* of apple growers to conduct business free of a regulation, and that the *value of that right* was measured by the losses that would result to the growers from the statute's enforcement). The Fifth Circuit has held that to measure the "object" of the litigation, "the amount in controversy is 'the value of the *right to be protected* or the extent of the *injury to be prevented.*'" *Hartford Ins. Group v. Lou–Con, Inc.*, 293 F.3d 908, 910 (2002) (emphasis added).

### II(B)(I). The Amount in Controversy is Calculated from the Plaintiff's Perspective

■ The parties raise two sub-issues concerning the amount in controversy requirement. The first sub-issue arises from the fact that they both argue their own respective valuation of the amount in con-

troversy should control. Puckett argues that the beneficial value *to Puckett* of those prayers should determine the amount in controversy. Puckett argues that this beneficial value is its right to continue to employ Waddell, free from the injury of liability for doing so in violation of the purported no competition agreement. United, on the other hand, argues that the detrimental value *to United* of granting the prayers for relief of Puckett determines the amount in controversy. United argues this detrimental value is measured by the value of sales Waddell conducted while at United.

When determining from whose perspective the amount in controversy is calculated, precedent identifies three principal approaches. The first approach, entitled the "plaintiff-viewpoint" rule, is the most established. *See 14B. Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3703* (3d ed.1998). Under this approach the federal courts should only measure the benefit of the action to the plaintiff. *Id.* The second approach, entitled the "either viewpoint" rule, governs in the Tenth Circuit and has attracted a growing number of followers among the federal district courts. *Id.* Under this approach, the federal courts can measure the benefit of the action from the perspective of the plaintiff *or* the defendant. If, from the perspective of either party, more than $75,000.00 is at issue, then jurisdiction exits. *Id.* The third approach, to which Wright & Miller attribute no title, measures the amount in controversy from the perspective of the party seeking to invoke federal jurisdiction. *Id.*(discussing how this approach can lead to anomalous results). A few district courts support this approach, as well as the Eighth Circuit in dictum. *Id.*[3]

---

**3.** A fourth possible rule has been identified as well. A federal district court in North Carolina refused to apply the above three approaches and stated it was "best to move away from 'viewpoint' terminology and instead recognize that any one case may be

The Fifth Circuit has addressed both the "plaintiff viewpoint" rule and the "either party" rule. *Garcia v. Koch Oil Co. Of Texas, Inc.*, 351 F.3d 636 (2003). In *Garcia*, the Fifth Circuit explicitly 1) applied the "plaintiff viewpoint" rule, 2) declined to apply the "either viewpoint" rule, 3) rejected the defendants' argument that Fifth Circuit precedent implicitly adopted the "either viewpoint" rule, and 4) stated its jurisprudence indicated it continued to support the "plaintiff viewpoint" rule. *Id.* at 639–640 & 640 n. 4.

Because the Fifth Circuit has continuously applied the "plaintiff viewpoint" rule, that approach applies in this case.

### II(B)(ii). Methods of Calculating the Amount in Controversy from the Plaintiff's Perspective

■ While the "plaintiff viewpoint" rule applies in this case, this still leaves the second sub-issue for the amount in controversy determination. That is, it is not entirely clear what methodology should be used to measure the value of the declaratory relief, as seen from the vantage point of Puckett.

Applying the definition of declaratory relief in *Hartford*,[4] Puckett argues its request for declaratory relief is the means used to seek two ends:

[1) ] the right to hire Waddell; the right to be free from liability in its decision to hire Waddell; and its right to continue to employ Waddell; [and 2) ] [t]he injury Puckett is attempting to prevent is injury which may be inflicted upon Puckett's business if Waddell is not allowed to continue his employment with Puckett."

Memorandum of Authorities in Support of Plaintiff's Motion to Remand, pp. 5. Puckett argues that regardless of whether the Court looks to the rights it seeks to protect, or the injury it seeks to prevent, the value of the declaratory relief does not exceed $75,000.00.

Puckett offers one argument and one affidavit in support of its argument. First, Puckett argues it is significant it does not seek monetary relief, and, in so arguing, implicitly argues this is a basis upon which the Court can determine that the value of the relief it seeks is not worth more than the jurisdictional threshold. That argument can be easily discarded. While the existence of potential monetary damages would have made the determination easier, the non-existence of those damages does not imply that the value of the declaratory relief does not exceed $75,000.00. Rather, the absence of monetary damages simply removes one factor from the overall equation in determining the amount in controversy.

Second, Puckett offers Hastings Puckett's affidavit. He is the Rental and Used Equipment Business Unit Manager for Puckett. Affidavit, attached as Exhibit A to Plaintiff's Motion to Remand. He states that, from the vantage point of Puckett, the declaratory relief it seeks does not exceed $75,000.00.

United, when arguing that the Court should determine the amount in controversy from its perspective, offered two items of evidence. Although this Court has determined that the amount in controversy argument of Puckett prevails over the argument of United, the evidence United offered in support of its unsuccessful argu-

---

legitimately valued in a number of different ways, no one of which may be said to inherently represent true value in every case." *Hoffman v. Vulcan Materials Co.*, 19 F.Supp.2d 475, 482 (D.C.N.C.1998); *See also* Fed. Prac. & Proc. Juris. § 3703.

4. As noted above, *Hartford* defined the "value of the object" in a declaratory relief as "the amount in controversy is 'the value of the *right to be protected* or the extent of the *injury to be prevented.*'" *Id.* at 910(emphasis added).

ment is still relevant to how this Court should determine the amount in controversy from the perspective of Puckett.

First, United offers Kohl Kaminski's Declaration. *See Declaration,* attached as Exhibit to Defendant's Memorandum of Authorities in Response to Plaintiff's Motion to Remand. Kaminski is the branch manager of the Pearl Branch Office of United. Kaminski stated "beginning on or about January 23, 2003, until April 8, 2004, Mr. Waddell was one of three salespeople for United's Pearl Branch Office and responsible *for over two million dollars in revenue* gained by United at that location." *Id.* at p.2, ¶ 9. The second item offered as evidence is a United invoice detailing company finances from March 1, 2003, to April 8, 2004. *See* Invoice, attached as Exhibit to Defendant's Memorandum of Authorities in Response to Plaintiff's Motion to Remand.[5] That invoice shows Waddell's sales for a thirteen month period. These sales amounted to $842,058.04.

With this conflicting evidence, the Court must determine the value of the right to be protected or the injury to be prevented. *Hartford,* at 910. The Court can reach its decision by solely looking to the right to be protected (i.e., the right to hire Waddell; the right to be free from liability in its decision to hire Waddell; and its right to continue to employ Waddell).

"The value of that right is measured by the *losses* that will follow from the [ ] enforcement [of the no compete agreement]." *Washington State,* at 347. The most difficult issue in this case is how to value those losses. The perspective of Plaintiff must govern, but two factors impact this valuation issue and the ability of the perspective of Puckett, and solely its

perspective, to determine the amount in controversy. The first is a matter of evidence, and the second is a matter of logical correlation.

As to the matter of evidence, Puckett offers little evidence that enforcement of the no compete agreement would not result in losses of $75,000.00 or greater. All Puckett offers as evidence is an affidavit in which Hastings Puckett states, in conclusory terms, *Puckett* does not *view* the claims as being worth more than that amount. But Puckett offers no concrete, tangible evidence (e.g., financial statements) that, other than the fact it does not *view* the claims as worth more than $75,000.00, they are not actually so. United, on the other hand, offers specific evidence of revenues Waddell garnered *for United,* revenues that are far and above the jurisdictional threshold.

The second matter is one of logical correlation. That is, the economic relationship of Puckett and United is, to an extent, like a see-saw. What one loses, another gains. For instance, in this case, Waddell secured revenues of $842,058.04 for United. While it may not be that Waddell secures this exact amount of revenues for Puckett, presumably Puckett hired Waddell because of his successful sales record. Furthermore, Puckett presumably expects that his successes will continue at their company. Therefore, presumably the effect of enforcing the no compete agreement would be far greater than $75,000.00. While economic relationship between Puckett and United may not be so exact that what one gains another necessarily loses (i.e., a one-to-one ratio), it is such that their relative positions are, to an extent, diametrically opposed.[6]

---

5.  Puckett, in its Rebuttal Response [sic] to Defendant's Memorandum of Authorities in Response to Plaintiff's Motion to Remand, did not object to the offering of this invoice as evidence.

6.  That is, this Court, and others when making analyses similar to the present, assumes that the aggrieved party will lose all of the business the former employee previously generated. This assumption is made as opposed to

A district court of the Northern District of Texas, when faced with a question similar to the present, stated the following:

> Plaintiff argues that under the Fifth Circuit's 'plaintiff perspective' jurisprudence, the potential losses to Defendants should not be considered when determining the amount in controversy. While Plaintiff is correct that the amount in controversy is to be adjudged from the viewpoint of the plaintiff, the Court notes that, in this particular case, the application of the 'plaintiff perspective' rule is not as straightforward as Plaintiff contends. By considering the potential losses to Defendants, the Court is not improperly considering 'the costs a defendant incurs in complying with declaratory or injunctive relief.'... Quite to the contrary, the dispute between the parties in this case is best characterized as a zero sum game—the 'value' of the rights in controversy directly corresponds with the 'losing' party's potential losses. As such, the Court's consideration of Defendants' potential losses is tied to its assessment of the 'value' of the rights Plaintiff seeks to protect.

*McCoy v. Exhibitgroup/Giltspur, Inc.*, Civ. A.No. 3:03–CV–3050P, 2004 WL 1562858, at *2 (N.D.Tex. July 2, 2004).

As should be apparent from the Court's discussion above, this Court agrees with the reasoning of the district court in *McCoy*. The "plaintiff viewpoint" rule applies, but this does not make the matter so simple that defendant's losses cannot be considered. The Court believes this is all the more the case when, as here, a plaintiff offers only conclusory beliefs that the amount in controversy is less than $75,000.00, but the defendant offers concrete, financial evidence.

Nevertheless, the Defendant has not carried its burden. The reason for this is simple. All of the information Defendant has supplied this Court deals with *revenues*, and not *profits*. For this Court to retain this case Defendant would have had to present financial information detailing that Waddell made *profits* for United in an amount exceeding $75,000.00. The only information Defendant supplied this Court is that Waddell secured *revenues* of $842,058.04 for United. Based on this sales revenue, for Waddell to have secured more than $75,000.00 in profits for United, 8.91% of these revenues would have to be pure profit. Absent evidence to the contrary, this Court will not assume such a profit margin in sales. The burden is on the Defendant. By not supplying this evidence, he did not meet that burden.

### *III. Conclusion*

IT IS THEREFORE ORDERED that the Motion to Remand [4–1] is well taken and is granted. The Clerk of the Court is directed to remand this matter to the County Court of Rankin County, Mississippi.

IT IS FURTHER ORDERED that as a result of this Opinion, the Motion to Consolidate the suit before this Court with the suit before Judge Wingate, Civil Action No. 3:03–CV–418WS, is denied.

---

assuming the former employee could simply be replaced, and hence, the "aggrieved" company would really not be aggrieved at all, since it would continue making just as many revenues with a new employee (if the courts did assume this, then there would truly be no monetary dispute between the two, other than the aggravation of losing an employee the company trained and, likely, an employee to whom a company disclosed trade secrets).