*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CAROL BEECHER and | ) | |
| PERRY BEECHER, | ) | Supreme Court No. S-16445 |
| | ) | |
| Appellants, | ) | Superior Court No. 3CO-02-00011 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| CITY OF CORDOVA, | ) | No. 7218 – January 19, 2018 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Cordova, Daniel Schally, Judge pro tem.

Appearances: Carol Beecher and Perry Beecher, pro se, Anchorage, Appellants. Holly C. Wells and Jack R. McKenna, Birch Horton Bittner & Cherot, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Carney, Justices. [Bolger, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

A city evicted commercial tenants from city-owned land and was granted a money judgment against them for unpaid rent and sales taxes. The tenants left behind various improvements, as well as items of personal property related to their operation of a marine fueling facility on the land. The city pursued collection of its money judgment

for several years before suspending its efforts; about eight years later it resumed its attempts to collect. The tenants, contending that they had reasonably assumed by the passage of time that the judgment had been satisfied, moved for an accounting of their left-behind property and the amount still owing on the judgment.

The city informed the superior court that it had executed only on bank accounts and wages and that several improvements had reverted to city ownership and therefore did not count against the judgment. It claimed not to know what happened to the rest of the property the tenants identified as having been left behind. The superior court found the city's response sufficient and allowed execution to continue.

The tenants appeal, arguing that they were entitled to a better accounting of their left-behind property and that the city is estopped from contending that the judgment is still unsatisfied. We agree in part. We hold that it was the city's burden to produce evidence of the property's disposition and that it failed to carry this burden. We also hold that there are genuine issues of material fact about whether the city is estopped from contending that the judgment remains unsatisfied. We therefore reverse the superior court's order accepting the accounting and allowing execution to continue; we remand for further proceedings in the superior court.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

Carol and Perry Beecher entered into a ground lease with the City of Cordova in 1997 to operate a marine fueling facility on City-owned land.[1] They

---

[1]  The Beechers executed the lease and operated the marine fueling facility through two closely-held corporations, Balance, Inc. and Sound Development, Inc. The Beechers are jointly and severally liable with the corporations on the judgments at issue on this appeal, however, and the corporations' separate existence is not relevant to our discussion.

eventually fell behind on the rent. In January 2002 the City delivered a notice to quit, informing the Beechers that they owed $30,527.22 in past-due rent and had until February 4 to bring it current. The notice warned that the lease would terminate if the Beechers did not meet the February 4 deadline. But the Beechers did not pay the past-due rent or vacate the property, and in March the City delivered an updated notice to quit. This notice informed the Beechers that the lease had terminated on February 4; it also reminded the Beechers that, pursuant to paragraph 9 of the lease, they had 90 days from termination — until May 5 — to remove any improvements, which would otherwise become the property of the City. The City also recorded notices of sales tax liens against the Beechers' corporations, covering all their real and personal property in the Cordova Recording District.

The Beechers still did not vacate the premises, and in April the City filed a complaint against them in the superior court seeking eviction, foreclosure of the sales tax liens, and a money judgment for both the past-due rent and unpaid sales taxes. The court ordered an eviction and later entered a money judgment against the Beechers in the amount of $118,759.61. The court also ruled that "by virtue of the lease" the City had gained "color of title" to any improvements remaining on the premises. The claim for lien foreclosure was apparently dropped; the record contains no further reference to the tax liens.

The Beechers then vacated the premises, but they left behind some personal property, including fuel tanks, vehicles, trailers, parts, and appliances. Nearly a year later, the City's attorney, in a March 2003 memo to the City manager, recommended that the City attempt to clarify ownership of this left-behind property. In April the superior court ordered debtor's examinations to occur in May. The City filed creditor's affidavits stating that it would attempt to satisfy the judgment by levying against the Beechers' bank accounts, a tug boat, a "Landing craft," two undeveloped tracts of real property, a

"Fuel Truck," a "Backhoe," the "Marine fuel facility," and a "Gas Station." In July the clerk of court issued writs of execution.

Of the items identified in the creditor's affidavits, the City executed only against the Beechers' bank accounts. It eventually recovered more of the judgment from their wages and permanent fund dividend checks. But in 2005, with the bulk of the judgment still unpaid, the City ceased its collection efforts.

Eight years went by; then in January 2013 the City obtained and recorded a renewal judgment. After learning that the City was again garnishing their wages, the Beechers sent the City a letter asking for an accounting of the judgment and the City's collection activities to date, specifically requesting "bill(s) of sale," public advertisements, and "dates of sales [of] any and all property seized and sold by the City." The City did not respond, so the Beechers retained a lawyer and repeated their request. Their second letter to the City described the Beechers' "equipment located at the Marine Fuel facility [as] including fuel trucks, tanker trailers, . . . assorted parts, tools, a Cat 235 excavator, and other pieces of equipment," and asked, "What happened to these items? Were they sold? Was the amount of the sale deducted from the judgment?" The record again shows no response from the City.

B.      Proceedings

The Beechers next filed a motion in superior court for an accounting of the City's collection efforts and the outstanding amount of the judgment. The City responded with an affidavit from its finance director, Jon Stavig. Stavig stated that the City had executed on the Beechers' bank accounts and wages, and he submitted a record of those amounts, which added up to over $34,000. He averred "[u]pon information and belief" that the City had sold certain "improvements" from the Beechers' fueling facility, "which included the floating fuel dock and gangway ramp," but that improvements belonged to the City pursuant to paragraph 9 of the lease and therefore their sale did "not

-4-                                                                                      **7218**

reduce the amount owed under the [j]udgment." Stavig reported that the City had not executed on the tug and landing craft identified in its 2003 creditor's affidavit as possible subjects for execution; instead, the two vessels had been foreclosed upon and sold at auction by a ships' mortgage lender. And Stavig also reported that two parcels of real property listed in the creditor's affidavit had been foreclosed upon by other lenders. Finally, Stavig attested that "the City remains open to examining any evidence or documentation [the Beechers] may have demonstrating the sale of equipment or property by the City as the City's accounting has been limited [to] its own records."

In response, the Beechers filed a list of all the personal property they alleged had been left behind on the leased property — including fuel trucks, parts vans, trailers, tanks, a "Jitney boat," and other "[p]arts and supplies," all of which they valued at $75,000 — and argued that the City must have sold it without crediting the proceeds toward the judgment. The Beechers also submitted photographs, which their attorney represented as showing "a tank and office retained by the City but not credited towards the judgment." The City responded by reiterating that it had seized and sold only "improvements" and that it had no legal obligation to execute against any particular item of the Beechers' personal property.

The superior court, finding that a hearing on the Beechers' motion was unnecessary, ruled largely in favor of the City. The court concluded that the finance director's affidavit "provided a satisfactory accounting of [the City's] collection efforts," agreed that the Beechers were "not entitled to a credit for the value of the marine fuel facility improvements," and lifted a temporary stay on the City's collection efforts. The Beechers moved for reconsideration, arguing that any "proper accounting . . . must include" the specific items of property they had identified as left behind, highlighting those items of personal property identified in the 2003 memorandum to the City manager and including a picture of a fuel tanker they claimed was in current use by the City. But

the superior court denied reconsideration and awarded attorney's fees and costs to the City.

The Beechers appeal.

## III. STANDARD OF REVIEW

We review questions of law using our independent judgment.[2] We review findings of fact for clear error.[3] We will find clear error only if "after a review of the record as a whole, we are left with a definite and firm conviction that a mistake has been made."[4]

## IV. DISCUSSION

The Beechers urge us to hold that the City did not provide an adequate accounting because it failed to directly address the disposition of the personal property left behind at the marine fueling facility. According to the Beechers, some of this property did not qualify as "improvements" that would revert to the City under the terms of the lease, and the City had an obligation to follow through on the implication of its 2003 creditor's affidavits that it would execute on the listed property and apply the proceeds to the judgment. The Beechers claim that the City unjustly enriched itself when it took possession of these items without crediting the Beechers for their value.

We agree that the City's accounting was inadequate. The Beechers produced evidence tending to show that the City took possession of their personal property; it was then the City's burden to produce evidence accounting for it.

---

**2**     *State v. Schmidt*, 323 P.3d 647, 655 (Alaska 2014).

**3**     *Resurrection Bay Auto Parts, Inc. v. Alder*, 338 P.3d 305, 307 (Alaska 2014) (quoting *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 883-84 (Alaska 2004)).

**4**     *Id.* (quoting *Fred Meyer of Alaska, Inc.*, 100 P.3d at 883-84).

## A. It Was Error To Find The City's Accounting Satisfactory.

A motion for an accounting seeks a kind of discovery or "compulsory disclosure"; if granted, the motion requires an adverse party to account for and surrender money or property that belongs to the moving party.[5] Because a request for an accounting assumes that the "party seeking relief" cannot determine on its own "how much — or, in fact, whether — any money is being held" by the nonmoving party, the burden of production does not "rest upon [the moving party], but . . . shift[s] to the [nonmoving party] once facts giving rise to a duty to account have been alleged and admitted."[6] To shift this burden, the moving party must show that "a relationship exists" between itself and the nonmoving party "that requires an accounting, and that some balance is due . . . that can only be ascertained by an accounting."[7] Once these elements are established, the burden is on the nonmoving party to produce the requested information, money, or property.[8] As with other discovery devices, an accounting is not proper when a party engages in "a fishing expedition, and alleges facts that are mere

---

[5] *Garcia v. Koch Oil Co. of Tex.*, 351 F.3d 636, 641 (5th Cir. 2003) (quoting *Rosenak v. Poller*, 290 F.2d 748, 750 (D.C. Cir. 1961)); *see also Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972); *Teselle v. McLoughlin*, 92 Cal. Rptr. 3d 696, 715-16 (Cal. App. 2009); *Failor v. MegaDyne Med. Prods., Inc.*, 213 P.3d 899, 905 (Utah App. 2009).

[6] *Garcia*, 351 F.3d at 641 (quoting *Rosenak*, 290 F.2d at 750).

[7] *Teselle*, 92 Cal. Rptr. 3d at 715 (citing *Brea v. McGlashan*, 39 P.2d 877, 880 (Cal. Dist. App. 1934); 5 B. E. WITKIN, CALIFORNIA PROCEDURE § 819 (5th ed. 2008)).

[8] *Garcia*, 351 F.3d at 641.

speculation."[9] But "the fact that it may be a considerable burden to render a proper accounting does not eliminate the need to account where a duty to account exists."[10]

The Beechers established the elements necessary to shift the burden of production to the City. The City does not dispute that it had a creditor-debtor relationship with the Beechers, and the Beechers submitted evidence that tended to show that the City held their personal property without accounting for its value. The City has not disputed that the Beechers left behind the property identified in their motion for an accounting; in fact the March 2003 memo from the City attorney listed a number of vans, trailers, trucks, and tanks that were then "located on the site."[11] The City claims, however, that it "should not be made to track down and account for every item that the Beechers abandoned on the property," and it argues that the Beechers have not shown "that the City ever sold [their] property or that any proceeds should be applied to the judgment."

But this argument misplaces the burden of production. "An action for accounting is not amenable to . . . summary adjudication upon a showing that [the moving party] does not possess and cannot reasonably obtain the evidence needed to

---

**9**     1A C.J.S. *Accounting* § 6 (2017) (citing *In re Wilson*, 442 B.R. 10, 19 (Bankr. D. Mass. 2010)).

**10**     *Id.* (citing *Andrikopoulos v. Broadmoor Mgmt. Co.*, 670 P.2d 435, 439-40 (Colo. App. 1983); *2416 Corp. v. First Nat'l Bank of Chi.*, 415 N.E.2d 420, 434 (Ill. App. 1980)).

**11**     There are some inconsistencies among the various itemizations of the personal property at issue. For example, the City attorney's memo lists "Five fuel tanker trailers," whereas the Beechers' submission in support of their motion for an accounting lists only four: two "tanker truck[s]," a "fuel truck," and a "tanker trailer." The Beechers' list includes an air compressor, a "Jitney boat," and winches that have no apparent counterparts on the City attorney's list.

[obtain an] accounting, because the very purpose of the accounting is to obtain such evidence."[12] While "it may be a considerable burden" for the City "to render a proper accounting" given the passage of time since the original judgment, the burden is nonetheless on the City to explain what happened to the Beechers' personal property after the City took possession of the leased premises.[13]

**B.     The City Has No Legal Obligation To Execute Against The Beechers' Personal Property.**

The Beechers argue that AS 09.35.030, along with the City's 2003 creditor's affidavits identifying particular property as subject to execution, required the City to execute against the items it identified. The statute provides that if a court issues a writ of execution "against the property of the judgment debtor," and if "the judgment directs particular property to be sold," the judgment creditor must "sell the particular [personal] property and apply the proceeds [to the] judgment."[14] The writs of execution in this case, however, did not "direct[] particular property to be sold." They instead simply *authorized* the City to "satisfy the judgment" with any "personal property subject to execution." The City acted within this grant of authority when it executed on the

---

[12]     *Teselle*, 92 Cal. Rptr. 3d at 716.

[13]     *See* 1A C.J.S. *Accounting* § 6 (2017) (citing *Andrikopoulos*, 670 P.2d at 440; *2416 Corp.*, 415 N.E.2d at 439-40). The City correctly asserts that it had title to improvements and was not required to credit their value to the Beechers' judgment. But accounting for the improvements does not satisfy the City's burden to account for personal property.

The City also claims that the Beechers' motion for an accounting is barred by laches. The City did not raise the issue of laches in the superior court, however, and we therefore do not consider it.

[14]     AS 09.35.030(1).

Beechers' bank accounts. We reject the Beechers' argument that the City was legally *required* to execute against their personal property.

The Beechers also claim, however, that they reasonably and detrimentally relied on the implication of the City's 2003 creditor's affidavits that it intended to execute on the listed property, and the City should therefore be estopped from claiming it had no obligation to do so. The superior court made no findings of fact relevant to estoppel, and we cannot decide this claim as a matter of law. But the Beechers have raised genuine issues of material fact about their reliance on the City's statements and conduct.

We have recognized two forms of estoppel that may be relevant: equitable estoppel and quasi-estoppel. Equitable estoppel requires proof of three basic elements: (1) "assertion of a position by conduct or word," (2) "reasonable reliance thereon," and (3) "resulting prejudice."[15] In addition, equitable estoppel "will be enforced only to the extent that justice so requires."[16] This latter consideration "should play an important role when considering estoppel against a municipality."[17] "[E]ven where reliance has been foreseeable, reasonable, and substantial, the interest of justice may not be served by the application of estoppel because the public interest would be significantly prejudiced."[18]

---

[15] *Jamison v. Consol. Utils., Inc.*, 576 P.2d 97, 102 (Alaska 1978).

[16] *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984) (citing *Glover v. Sager*, 667 P.2d 1198, 1202 (Alaska 1983)).

[17] *Id.*

[18] *Id.*

Quasi-estoppel requires only that a party "assert[] a position so inconsistent" with one previously taken in the same litigation "as to make the present claim unconscionable."[19]

There is evidence to support a finding that the City "asserted a position" through both statements and conduct. In its creditor's affidavits it said it would "attempt . . . to satisfy the judgment by levying against" certain property, including the "Marine fuel facility" and a "Gas Station," terms which could be broadly construed to include all associated movable property. As for its conduct, the City — after executing on bank accounts and wages — ceased all collection attempts for nearly eight years, which could lead a reasonable debtor to conclude that the remainder of the judgment had been satisfied through sale of the Beechers' personal property. It is also unclear from the sparse record before us whether the sales tax liens on the personal property played any role in the litigation and collection efforts.

And if the City did in fact retain the Beechers' property for its own use without accounting for its value, as the Beechers allege, it may have been unjustly enriched to the Beechers' detriment; such evidence could be relevant to the prejudice, interests of justice, and unconscionability elements of the estoppel doctrines.

While some evidence in the record thus tends to support the Beechers' position, we cannot resolve the estoppel claims as a matter of law. The superior court on remand should consider whether the Beechers have established the necessary elements of either equitable estoppel or quasi-estoppel.[20]

---

[19]     *Jamison*, 576 P.2d at 102  (quoting *Fast v. Fast*, 496 P.2d 171, 175 (Kan. 1972)).

[20]     The Beechers also appeal the superior court's award of attorney's fees and the court's decision to lift a temporary stay on collection activities. Because we reverse the superior court's order on the Beechers' motion for accounting, we vacate the award of attorney's fees. And because the stay on collection activities was contingent on

(continued...)

## V.    CONCLUSION

We REVERSE the superior court's order granting in part and denying in part the Beechers' motion for an accounting.  We REVERSE the superior court's order lifting a temporary stay on the City's collection activities, VACATE the award of attorney's fees, and REMAND to the superior court for further proceedings consistent with this opinion.

---

[20](...continued)
resolving the Beechers' motion for an accounting, we also reverse the superior court's decision to lift the stay.